[S. F. No. 8767. In Bank.—June 4, 1920.]

## GEORGE DOWNING, Respondent, v. CUTTING PACKING COMPANY (a Corporation), Appellant.

[1] Landlord and Tenant—Default in Payment of Rent—Notice to Quit—Right to Recall.—A lease is not terminated after default in the payment of rent by the mere giving of the notice provided by subdivision 2 of section 1161 of the Code of Civil Procedure to pay the rent within three days or quit the premises, since the object to be attained by the notice is a forfeiture of the lease, which does not occur until there has been a failure to pay the rent during the three-day period, and, while such time is running, the landlord may elect to recall or waive the notice and abandon the proceeding for a forfeiture.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Geo. E. Crothers, Judge. Reversed.

The facts are stated in the opinion of the court.

Lloyd Baldwin and John F. Cassell for Appellant.

Houghton & Houghton and Edward T. Houghton for Respondent.

SHAW, J.—The appeal is from the judgment. The material facts are as follows:

On October 31, 1914, Thomas W. Butcher leased to Ibos and Roche certain premises at the corner of Jackson and Drumm Streets in San Francisco, for the term of five years beginning December 1, 1914. The rental, after the first three months, was five hundred dollars a month, payable on the first day of each month, in advance. Thereafter in August, 1915, Butcher sold the premises to the Cutting Packing Company, subject to the lease. As a part of the consideration of this sale, the plaintiff, Downing, executed an agreement with the defendant in pursuance whereof the plaintiff deposited in the American National Bank the sum of six thousand dollars to be held by said bank for the purpose of securing the payment of the rents falling due thereafter from Ibos and Roche under said lease. The agreement provided that if Ibos and Roche should make default

in the payment of any monthly installment of rent then "as often as payment of said installments of rent shall become in default the said American National Bank of San Francisco, upon the written demand of [Cutting Packing Company] shall pay to the said [Cutting Packing Company] out of the said moneys so deposited with it, the amount of the installment or installments of the rent so in default, until the whole of said sum of $6000.00 is exhausted," and the said bank was thereby authorized and directed, upon receiving written notice that an installment of rent was due and unpaid, to pay to the Cutting Packing Company, out of said moneys, the installment so in default.

The installments falling due for October, November, and December, 1915, and January, 1916, were not paid by Ibos and Roche, but were paid by the said bank out of the fund deposited by Downing, as provided in said agreement. Because of this failure of Ibos and Roche, Downing became interested in obtaining a new tenant and began negotiations with the Cutting Packing Company to that end. In pursuance of these negotiations Downing procured one Webster as a prospective tenant, and an agreement in writing was proposed by the Cutting Packing Company to Webster, under which a lease of the premises was to be given to Webster as soon as the Cutting Packing Company could obtain possession thereof, either by the surrender of Ibos and Roche or by proceedings to oust them in unlawful detainer. Webster proposed conditions to which the company would not agree and the negotiations ceased. The proposal, the counter-proposal, and the rejection thereof all occurred on February 1, 1916. Expecting that such agreement would be made, a notice from the company to Ibos and Roche to pay the rent or quit the premises was prepared by the attorney for the company for service. This notice was in the form required by subdivision 2 of section 1161 of the Code of Civil Procedure. It required Ibos and Roche to pay to the Cutting Packing Company, within three days after the service of the notice, the sum of five hundred dollars, due as rent for the month of January, 1916, or to deliver the possession of the premises to said company, and stated that unless they so paid said rent or delivered the possession, legal proceedings against them would be instituted for the recovery of possession. This notice was

delivered by the attorney of the company on February 1st to a clerk in his office for service, and it was served on Ibos and Roche on February 2, 1916. The date for the payment of the rent therein demanded expired on February 5, 1916. The Cutting Packing Company then decided to abandon the proceedings for restitution of the premises, and on February 4th, it demanded of the said bank the payment of five hundred dollars, due for rent for January, and also the five hundred dollars which became due on February 1st, for the rent of that month, and in pursuance of said agreement, authorizing and directing said bank on such demand to pay said rents, the said sum of one thousand dollars was paid by it to the Cutting Packing Company on February 4th. It does not appear that Ibos and Roche were aware of this payment, or consented' thereto, but they continued in possession of the premises. On February 5th Downing demanded of Cutting Packing Company that it immediately proceed to oust Ibos and Roche by unlawful detainer proceedings. He made similar demands on February 26, 1916, and March 1, 1916. The company did not comply with these demands, but suffered the tenants to remain in possession, and demanded and received from the bank the rent for the months of March, April, May, and June, amounting to two thousand dollars, out of the fund so deposited by Downing, as aforesaid, notwithstanding the continued objections of Downing to its so doing. This action is for the recovery by plaintiff of the said sum of two thousand dollars.

The case presents the question whether or not, after having given the notice of February 2, 1916, to pay rent or quit, the Cutting Packing Company had the lawful right to abandon further proceedings under said notice and collect the rents for subsequent months from the fund deposited by Downing as security therefor, notwithstanding the protest of Downing against its so doing.

The respondent contends that the company could not withdraw or waive the notice to pay rent or abandon the proceeding to recover possession and hold Downing liable as surety, without his consent. He states his position as follows: "Where a valid notice to quit is given by a landlord to his tenant, the effect of such notice is to terminate the relation of landlord and tenant between the parties

as of the date limited in the notice; that a notice to quit is a notice that cannot be withdrawn or done away with at the option of the party giving it and without the consent of both landlord and tenant; and even if so withdrawn a new tenancy is thereby created; consequently, a guarantor of the rent under the original tenancy is not liable for rent which becomes due after the time the notice would have expired or actually did expire.''

The appellant calls attention to the fact that there are two classes of notices to quit. First. Where the tenancy is from year to year, from month to month, or at will, or where a clause in the lease provides for a termination by notice. (Code Civ. Proc., sec. 1161, subd. ᐧ 1.) Second. Where the law allows the landlord to terminate the lease, because of some default by the tenant in the performance of its conditions or covenants, by giving a notice to the tenant to perform within a specified time or deliver the possession. (Code Civ. Proc., sec. 1161, subds. 2, 3.) Its claim is that the authorities relied on by the respondent relate exclusively to notices of the first class, that a different rule is applied in those of the second class, that in such cases there is a forfeiture of the remainder of the estate, which forfeiture occurs only when a second condition or act has supervened in connection with the notice, and that such a notice may be withdrawn and the proceeding for forfeiture abandoned by the party giving the notice, without the act or consent of the party to whom it is given, provided the withdrawal occurs before the expiration of the time therein fixed for the forfeiture. His theory is that when a notice to pay rent within three days or quit, as provided by section 1161, is served, no change in the legal relations between the parties takes place at that time or during that period, that the tenant may pay the rent within the time, in which case the lease continues in force unchanged; or he may allow the rent to remain unpaid and thus terminate the lease at the end of the three-day period; but that if, while the time is running, the landlord elects to recall or waive the notice and abandon the proceeding for a forfeiture, he may do so and the lease will continue in force thereafter.

The language of the section shows that the appellant's theory is correct. Subdivision 1 applies only to cases where the tenant holds over ''after the expiration of the term for

which it is let to him'' and to tenancies at will which have been ended by a thirty days' notice. (Civ. Code, sec. 789.) This would, of course, include all tenancies of the first class above described. The provisions governing notices of the second class are set forth in subdivisions 2 and 3. Notices to pay rent or quit are provided for in subdivision 2 and by a part of subdivision 3 referring thereto. They are as follows:

''2. When he continues in possession, . . . without the permission of his landlord, if any there be, after default in the payment of rent, pursuant to the lease or agreement under which the property is held, and three days' notice, in writing, requiring its payment stating the amount which is due, or possession of the property, shall have been served upon him and if there is a subtenant in actual occupation of the premises, also upon such subtenant.''

''3. . . . Within three days after the service of the notice the tenant, or any subtenant in actual occupation of the premises, or any mortgagee of the term, or other person interested in its continuance, may perform the conditions or covenants of the lease *or pay the stipulated rent,* as the case may be, and thereby save the lease from forfeiture.''

The language of the last clause of subdivision 3, above quoted, shows that the object to be attained by a notice under subdivisions 2 and 3 is a forfeiture of the lease. If the tenant, or other person interested, shall ''pay the stipulated rent'' he may ''thereby save the lease from forfeiture.'' The lease in such cases is not terminated by the expiration of the term fixed therein or by any provision therein for a termination by the parties, but solely because of the default in the payment of rent, the subsequent notice, the lapse of three days, and the ensuing forfeiture. The established rule is that where the right to a forfeiture is created by contract or by law ''it has always been considered that it was necessary to restrain it to the most technical limits of the terms and conditions upon which the right is to be exercised.'' (*Jameson* v. *Chanslor-Canfield etc. Co.*, 176 Cal. 11, [167 Pac. 369]; *Randol* v. *Scott,* 110 Cal. 596, [42 Pac. 976].)   [1]   Under this rule it must be admitted that the forfeiture does not occur until the last of the acts which are to create it has occurred. It, therefore, does not take place until there has been a failure

to pay the rent during the three days allowed by the statute. It follows also that if the lease is not terminated by such forfeiture it remains in force for the remainder of the term, or until it is ended in some manner by some subsequent act or agreement. The respondent concedes that if Ibos and Roche had paid the rent themselves at any time within the three days following the service of the notice the lease would have remained in force to the same extent as if no notice had been given. The landlord could not have accepted the rent during that period and at the same time have claimed that the notice itself forfeited the estate and terminated the lease. Since forfeitures are not favored in law, the consequence of these principles would be that if the rent was paid in any manner or from any security provided therefor by Ibos and Roche, or by any other person for their benefit, during the three days, the forfeiture is thereby waived and the lease will remain in force.

The respondent claims that this result is avoided by reason of the fact that the deposit in the bank was not made by Ibos and Roche, nor at their instance, so far as appears, but was made by Downing at the time of the sale from Butcher to the Cutting Packing Company, and, apparently, for some purpose in the interest of Butcher or Downing. If it was done for this purpose the fact is not fully disclosed by the record. But we regard the point as immaterial, for whatever the motive or inducement to Downing or Butcher may have been, the result was that the security inured to the benefit of Ibos and Roche and to their landlord, the Cutting Packing Company. Ibos and Roche remained in possession after the security was deposited, and availed themselves of the benefit thereof by allowing the rent to be paid out of that fund instead of paying it themselves. After the giving of the notice to quit they still remained in possession, and continued therein until the payments here in controversy were made. It must, therefore, be presumed that they consented to such payments. The bank stood in the position of their agent with respect to the matter of making the actual payments of the rent and the payments operated to their benefit. The forfeiture, as we have seen, had not occurred at the time the payment of February 4th was made. If the notice had terminated the lease or created the forfeiture, or if

Ibos and Roche desired that it should have that effect, it was their duty to vacate the premises on or before the expiration of the three-day period, and also to give notice to the bank to withhold further payments of rent accruing after the 1st of February. Since they did not do either of these things the conclusion must follow that they acquiesced in the payment and that the lease was not forfeited, but remained in force as completely as if no proceedings for forfeiture had been begun, and that the security deposited for the payment of rent remained available to the Cutting Packing Company for that purpose.

The respondent, in support of the position that the notice terminated the lease, cites 1 Wood on Landlord and Tenant, sec. 44; Woodfall on Landlord and Tenant, sec. 423; Underhill on Landlord and Tenant, sec. 127; *Alden* v. *Mayfield,* 164 Cal. 11, [127 Pac. 45]; *Myers* v. *Herskowitz,* 33 Cal. App. 581, 584, [165 Pac. 1031]; *Western Union Tel. Co.* v. *Pennsylvania R. R. Co.,* 120 Fed. 365; *Wisner* v. *Richards,* 62 Wash. 429, [Ann. Cas. 1912D, 160, 113 Pac. 1090]; *Doe* v. *Calvert,* 2 Camp. 388; *Cheny* v. *Batten,* 1 Cowp. 245; and *Fitzpatrick* v. *Childs,* 2 Brewst. (Pa.) 367. An examination of these authorities shows that they all relate to notices to quit which did not involve a forfeiture, but which, either by reason of the law or of some clause in the lease providing therefor, operated to terminate the tenancy between the parties. Thus, in *Alden* v. *Mayfield,* there was a tenancy from month to month which had been terminated by a thirty-day notice as the law provides it may be. (Civ. Code, secs. 1944, 1946.) In *Western Union Tel. Co.* v. *Pennsylvania R. R. Co.,* the lease itself provided that it could be terminated by either party on six months' notice and such notice had been given. Even in that case the court recognized the rule for which the defendant here contends by saying: "It will be observed that the withdrawal of a notice to quit is not, like a waiver of forfeiture, the act of one party, but requires the assent of both; and when such joint assent is given, it creates a new tenancy." (120 Fed., p. 385.) In this way it distinguishes cases where the notice itself terminates the tenancy from cases where the tenancy is only terminated by the occurrence of a forfeiture. The passage quoted also recognizes the law to be that the forfeiture may be waived by the action of the

party in whose favor it occurs without the concurrence or consent of the party upon whom it is to be inflicted. In *Wisner* v. *Richards* the lease in question was terminable by its own provisions by a month's notice given by either party. The same is true of all the other cases except *Myers* v. *Herskowitz*. That case is somewhat peculiar but it is not authority in favor of the plaintiff. The lease there contained a covenant that the tenant should keep a certain passageway clear of obstructions. The notice to quit was given under subdivision 3 of section 1161 requiring the tenant to perform the covenant or quit possession. Suit was begun ten days after the notice was served, the tenant continued in possession, and thereafter the landlord accepted rent from him during the pendency of the action until near the time of judgment. The court held that the acceptance of rent while the tenant so remained in possession was not a waiver of the forfeiture arising from the notice to perform the covenant or quit, unless it was received in such a manner as to imply that it was so intended by the landlord.

There are authorities in support of the contention of the appellant. In *Tuttle* v. *Bean*, 54 Mass. (13 Met.) 275, it is held that if, after giving the notice to quit, the landlord told the tenant that he need not quit in pursuance of the notice, it constituted a waiver of the notice and prevented a forfeiture of the lease. In *Hodgkins* v. *Price*, 137 Mass. 13, it was held that, where a notice to quit for nonpayment of rent was given, the forfeiture does not become absolute until the time given in the notice under the statute has run; the court saying: "Until then the tenant has the right to pay or tender the rent, and reinstate himself in his rights. . . . The forfeiture is at most conditional, and may be purged and saved by the payment or tender of the rent due." This language, it will be observed, is substantially the same as the above quoted clause from subdivision 3, section 1161. The following cases are substantially to the same effect and support the appellant's claims. (*Whitney* v. *Swett*, 22 N. H. 10, [53 Am. Dec. 228]; *Norris* v. *Morrill*, 43 N. H. 213.)

The appellant also cites cases which declare the rule to be that even in cases of the first class above described, where the notice operates to fix the end of the tenancy prior to the time it would otherwise expire, the notice can be waived

by the landlord and the tenant restored to his original term. This question, however, we need not consider. It is not involved in the case.

It is apparent from these considerations that the court erred in holding that the lease was terminated by the giving of the notice to quit and that the security deposited was not available to the appellant as a fund for the payment of the subsequent rents.

The judgment is reversed.

Lennon, J., Wilbur, J., Olney, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.

'All the Justices concurred.