·[Civ. No. 2988.   Third Appellate District.—October 29, 1925.]

## GEORGE COSTELLO, Appellant, v. MARTIN BROTH-ERS (a Copartnership) et al., Respondents.

[1] Landlord and Tenant — Default in Payment of Rent — Re-entry by Landlord—Election of Remedies.—Where a lease provides for the payment by the lessees of a stipulated monthly rental, payable in advance on the first day of each month, and that if default shall be made in the payment of the rent or in any of the covenants contained in the lease the lessor may re-enter said premises and remove all persons therefrom, the lessor has the option, on the lessees' default in payment of rent, to sue directly for the installments of rent then due, allowing the lease to continue in force, or to terminate the lease in the event of non-payment after demand and notice.

[2] Id.—Notice to Vacate — Termination of Lease — Payment of Rent.—Where the lessor elects to terminate the lease and serve notice on the lessees giving them the option of paying the amount due within the time prescribed in the notice or surrendering the possession, and the lessees exercise the option given them to vacate the premises, the effect of the vacation of the premises by the lessees within the time limited in the notice has the effect to terminate the lease, and the fact that on the following day, and within the time limited by the notice, the lessees pay the rent is immaterial.

[3] Id.—Action for Damages—Injuries to Crop—Liability of Tenant—Evidence.—In this action by a lessor to recover damages for the breach by the lessees of a covenant of the lease requiring the lessees to keep the alfalfa on the leased premises in first-class condition, and 'to seed, reseed, tend, and irrigate the said alfalfa in accordance with the most approved methods of farming, and which it is alleged the lessees neglected to do and allowed said alfalfa to decay and become of little or no value, thereby diminishing or reducing the value of the lands covered by the lease, the lessees were not liable in damages where it was shown by the evidence that the injuries complained of were the result of the water-logging of said lands and other lands in the district due to a rise in the water-table which destroyed the tap-root of the alfalfa and to a certain extent destroyed the corona so that there would be no production of any consequence, and any attempt on

2.   Surrender and acceptance of term as affecting right to recover rent, note, 12 A. L. R. 830.

the part of the lessees to prevent or repair the injury suffered by the lessor would have been futile and would have resulted in no benefit to him.

(1) 35 C. J., p. 1068, n. 18; 36 C. J., p. 398, n. 81, p. 399, n. 84.
(2) 35 C. J., p. 1069, n. 32; 36 C. J., p. 337, n. 74, p. 340, n. 93.
(3) 36 C. J., p. 98, n. 94 New.

APPEAL from a judgment of the Superior Court of San Joaquin County. George F. Buck, Judge. Affirmed.

The facts are stated in the opinion of the court.

Levinsky & Jones, E. H. Christian and Ernest S. Leslie for Appellant.

Berry & Watson and Hubert H. Briggs for Respondents.

FINCH, P. J.—The complaint alleges that the plaintiff leased certain lands to defendants for the term of five years from the first day of October, 1919; that defendants went into possession under the lease; that on the seventeenth day of August, 1923, they "abandoned the said premises and informed the plaintiff that they . . . would no longer be bound by any of the terms of the said lease"; that the plaintiff, since such abandonment, has diligently endeavored to procure a tenant for the premises, but has been unable to do so; and that by reason of said abandonment he has been damaged in the sum of $4,225.

For a second cause of action it is alleged that the defendants "failed to keep all of the alfalfa on said premises in first-class condition; that they failed to seed and reseed, tend, and irrigate the said alfalfa in accordance with the most approved methods of farming as they had in said lease covenanted to do, but allowed the said alfalfa on said premises to decay and become of little or no value thereby diminishing or reducing the value of the said lands in the sum of two hundred dollars per acre." The complaint alleges other breaches of the lease by the defendants, but the court found against the plaintiff thereon and such findings are not attacked on this appeal.

The answer alleges that the plaintiff "terminated said lease . . . and notified the said defendants and each of

them that said lease was terminated, and notified the said defendants and each of them to quit said premises and that said lease would be of no further force and effect and that the defendants or either of them would have no further right therein''; that pursuant to said notice and termination ''and at the request of the plaintiff, the said premises were surrendered to the plaintiff by the defendants and each of them, and plaintiff immediately accepted the surrender and entered into possession thereof.''

In addition to denials of the allegations contained in plaintiff's alleged second cause of action, the answer alleges that ''the principal and material inducement for the leasing of said premises, and which the plaintiff well knew, was the raising of alfalfa thereon for . . . dairy purposes; that at the time of the leasing of said premises the said lands thereof did produce and there was growing thereon a good and sufficient quantity of alfalfa; that thereafter, and notwithstanding the best efforts of the defendants in farming said premises as aforesaid, and notwithstanding that the defendants did reseed and attempt to restore said alfalfa, said alfalfa during the year 1922 commenced to deteriorate and perish and continued to deteriorate and perish until the greater part thereof had entirely perished by reason of unfavorable soil and water conditions in said locality and not for the want of ordinary care on the part of the defendants or any of them, and the stand and growth of alfalfa on said premises did, on or about August 17th, 1923, become entirely insufficient for said dairy purposes; and by reason thereof the defendants did on said 17th day of August, 1923, vacate the said premises and surrender the same to the plaintiff with his full consent to and acceptance of said surrender.''

The court made findings of fact against the plaintiff and in favor of the defendants, substantially in the language of the answer, and gave the defendants judgment for costs of suit. From this judgment the plaintiff has appealed.

The premises described in the complaint contain 120 acres of land, on which were buildings and fences suitable for dairy purposes. It was stipulated at the trial that at the time the defendants went into possession there was a first-class stand of alfalfa on all of the land.

The lease provided for the payment by the defendants of a monthly rental of $325, payable in advance on the first day of each month; "that said land is leased and taken for dairy purposes only and for no other purpose whatsoever"; that "if default shall be made in the payment of the rents and or in any of the covenants herein contained, then it shall be lawful for the lessor to re-enter said premises and remove all persons therefrom; . . . that time is of the essence of said agreement of the lessees to make said payments as above provided." On the fifteenth day of August, 1923, the plaintiff signed and caused to be served on defendants the following notice:

"Notice to Pay Rent.

"To Martin Brothers, Tenant in Possession:

"You are hereby required to pay, within three days after the service on you of this notice, the rent of the premises hereinafter described, and of which you now hold possession, said rent now amounting to the sum of $450.00 from the 9th day of July, 1923, to the present 10th day of August, 1923. Or to deliver up possession of the said premises within said three days to George Costello or his attorney E. H. Christian who is hereby authorized to receive possession thereof, or any rent due or unpaid, from you, or I shall institute legal proceedings against you to recover possession of said premises, with treble rents, said premises are situated in the County of San Joaquin, State of California, and described as follows: As being the South Twenty (20) acres of Lot Two (2) and also Lots 63–64A. and 64 B. of the Naglee-Burk Tract of said county and state, and containing in all One Hundred and Twenty (120) acres, more or less.

"Reference is hereby made to that lease made by the parties hereto on the first day of October, 1919, and its terms made a part of this notice."

The defendants vacated the premises on the seventeenth day of August, 1923, and on the next day they paid all rent due up to the 31st of that month.

The plaintiff moved on to the premises "the last part of August," 1923, and has resided there ever since. He endeavored to relet the premises to others, but was unable to do so, except for short periods and at small rentals. He commenced this action on the fifth day of September, 1923.

The record is silent as to when the defendants first had notice of the action, other than that it shows they filed a demurrer to the complaint on the first day of October, 1923.

[1] On the defendants' default in payment of rent, at least two courses were open to plaintiff. He had the option to sue directly for the installments of rent then due, allowing the lease to continue in force, or to terminate the lease in the event of nonpayment after demand and notice. [2] He elected to pursue the latter course and by the foregoing notice he gave the defendants the option of paying the amount due within the time prescribed or surrendering possession. The defendants exercised the option given them by the notice by vacating the premises. Had they failed to avail themselves of either option, it is to be inferred from the contents of the notice that the plaintiff would have commenced an action of unlawful detainer against them. Had he recovered possession of the premises in such an action, he would have been entitled to judgment for rents due up to the time of such recovery, but he would not have been entitled in that action, or in any other action, to a judgment based upon subsequent rents or rental values. It is not perceived that a different rule should apply where a lessee voluntarily surrenders possession under one of the options given him by the lessor. The notice did not of itself terminate the lease. It was in the nature of an alternative offer which became effective upon the acceptance by defendants of one of the alternatives thereof. The case is unlike that of *Downing* v. *Cutting Packing Co.,* 183 Cal. 91 [190 Pac. 455], where the lessor, after giving a similar notice to the lessees, abandoned the proceeding for a forfeiture of the lease within the three-day period, accepted payment of the overdue rent, and the lessees remained in possession. In that case, at page 96, it is said: "If the notice had terminated the lease or created the forfeiture, or if Ibos and Roche (the lessees) desired that it should have that effect, it was their duty to vacate the premises on or before the expiration of the three-day period." In this case the lessees did vacate the premises within the three-day period, and it must be held that the effect thereof was to terminate the lease. The fact that on the following day, also within the three-day period, the lessees paid the overdue rent is immaterial. Such payment was but the dis-

charge of an obligation which they were bound to perform, and the time of such performance is of no consequence here, it being after the surrender of the premises. While the surrender of the premises, under the circumstances stated, terminated the lease as to the lessor's right to rentals subsequent to such surrender, it did not affect the lessees' liability for rent accrued prior to such surrender. (*Anheuser Busch Brewing Assn.* v. *American Products Co.,* 59 Cal. App. 718, 723 [211 Pac. 817].) If the defendants had not paid the accrued rent until after the expiration of the three-day period, or one day later than that on which it was actually paid, it could not be contended that the lease was continued in force. No reason appears why a different effect should be given to a payment made within that period but after the surrender of the premises in compliance with one of the options given by the notice.

The evidence fully supports the findings of the court against plaintiff on his second alleged cause of action. The land in question lies in an irrigation district. Lands outside the district at a higher elevation than those within it, are under irrigation. Several witnesses testified that during the years 1922 and 1923 the water-table gradually rose in plaintiff's land and in other lands in the district to such level as to destroy most of the alfalfa growing thereon. The engineer of the district, an experienced irrigation engineer, testified: "The first indications of a serious water logging of the land were developed in the summer of 1922. . . . The major cause of it is due to the irrigation of the higher lands." On plaintiff's land in 1923, the water-table "varied from 18 to 30 inches." That condition prevailed "to a major extent" throughout the district. "It destroyed the tap root of the alfalfa and to a certain extent destroyed the corona so there would be no production of any consequence." On plaintiff's land "most of it was in very bad shape." "Q. Would it be possible by the resowing, plowing, farming it in proper and farmerlike manner to get alfalfa to grow and produce ordinary fair crop with the water table as high in that land as you found it? A. No, can't be done." In 1921 the water-table on plaintiff's land varied "from 4 to 6 feet" from the top of the ground. In 1922 it was from "2½ to 4 feet in this particular property." The rise in the water-table "is due

to the seepage through various strata of alluvial soils there.
. . . It does not flow on the surface." In 1923 the district
was "installing a pumping drainage unit which was not put
in until the latter part of the summer, consequently there
was a great accumulation of drainage water in there, and
the drainage canal which, in relation to this ranch, flows
practically along the south line, that was wholly full of water.
The river was fairly high and . . . the water in the river is
higher than this land, so a good area of this land that has
been supplied lies between the hydrostatic pressures of the
water surface and the ground waters to the south of it and
also to the reaction of the river." If the drainage unit had
been in operation in 1922, "it would naturally have been
beneficial, but that benefit is something that is not brought
about instantaneously, it takes time. . . . The reaction from
the river . . . is quite decided. . . . When the tide backs
up to the river . . . the flow of water in the drainage ditches
is reversed." The witness, testifying the latter part of
March, 1924, further stated that since the drainage unit had
been installed "the hydrostatic line . . . has uniformly re-
ceded throughout that country about 6 inches"; and that
"we had hopes that we would get it down so that there will
be a growing plane of 4½ feet." He also testified that
prior to the installation of the aforesaid pumping unit the
district had in operation a drainage pump capable of dis-
charging six second-feet of water, but that it "was totally
inadequate to handle the water."

[3] From the foregoing statement of facts it is clear that
the defendants are not liable for the destruction of the alfalfa
growing on the land at the time they went into possession.
They could have saved such alfalfa or caused other alfalfa
to be planted and successfully grown on the land only by
operating pumps of sufficient capacity to keep the water-
table down to a growing level. It is usually true, and the
evidence shows it to be true in this case, that the water-table
in a single parcel of land cannot be materially lowered as a
separate unit, but that the draining of one parcel necessarily
drains out the ground waters in the surrounding lands which
are immediately connected therewith. In other words, it is
impossible to drain one part of a reservoir without corre-
spondingly lowering the water surface of the whole thereof.

It was stipulated that there was a good stand of alfalfa on the land in February, 1922. The evidence shows without conflict that practically all of the alfalfa, except that on a few acres, was dead when defendants surrendered possession. The overwhelming weight of the evidence is to the effect that the destruction was due to the general rise of the water-table in the land. The lease provides that "the lessees will farm said land . . . in a good and farmerlike manner and in accordance with the usual custom or course of farming practiced in the neighborhood, and that they will keep all of the alfalfa on said premises in first-class condition and will seed and re-seed, tend and irrigate the said alfalfa in accordance with the most approved methods of farming." In ascertaining the meaning of the covenant to "keep all of the alfalfa on said premises in first-class condition," consideration must be given to those parts of the sentence which immediately precede and those which follow the language last quoted. From the sentence as a whole it clearly appears that it was not the intention of the parties to make the lessees insurers of the stand of alfalfa growing on the land at the time of the execution of the lease, but rather that the parties contemplated that some of the alfalfa would die, in which event the lessees were to "seed and re-seed, tend and irrigate the said alfalfa in accordance with the most approved methods of farming." No "approved method of farming" would warrant the seeding of land to alfalfa where the original stand had been destroyed by the presence of an existing high-water table and any new stand must inevitably perish from the same cause. Neither would the "most approved method of farming" require the lessees to go to the great expense of draining the whole irrigation district in order to preserve the lessor's alfalfa or to develop a new crop, and it certainly was not within the contemplation of the parties that this should be done by the lessees. Since nothing of value would have resulted from reseeding the land under the circumstances stated, the plaintiff has suffered no damage from the failure of defendants to do so, and the defendants were not required to do a vain thing. If this were an action for rent under a lease still in force and the lessees were defending on the ground of the destruction of the alfalfa, other considerations might prevail, but under the circumstances of

this case the defendants are not liable in damages, because they were without fault, and any attempt on their part to prevent or repair the injury suffered by plaintiff would have been futile and would have resulted in no benefit to him.

The judgment is affirmed.

Hart, J., and Plummer, J., concurred.