[Civ. No. 9891.   Second Appellate District, Division One.—February 14, 1936.]

GRAND CENTRAL PUBLIC MARKET, INCORPORATED (a Corporation), Respondent, v. J. I. KOJIMA, Appellant.

Randall & Bartlett and Kenneth W. Kearney for Appellant.

Walter S. Coen and Horace W. Danforth for Respondent.

HOUSER, P. J.—At this time, a decision by this court in the instant case arises from the fact that, following a former decision therein, a motion to vacate the judgment that theretofore had been rendered, and a petition for rehearing of the appeal, were granted. The sole and only reason for the granting of such motion and such petition was that the opinion theretofore rendered by this court was prepared and written by Judge Lester Wm. Roth, who was then, and still is, sitting as a justice *pro tempore* of this court, and who, in the course of proceedings had in the lower court, had ruled on various motions, etc. in the cause, and therefore was disqualified from participating in a decision on an appeal

from the judgment. As a matter of fact, as to all but one of the several motions to which attention was directed by the moving party in this court, they were decided in his favor;—hence as to them, he had no real cause for complaint. But since as to the remaining question in the lower court, the ruling by Judge Roth was against the contention of the moving party in this court, and since the same question was involved in the appeal, it was deemed advisable, if not necessary, that the judgment rendered by this court be vacated and a rehearing granted. However, at the outset, it should be stated that at the time the case was submitted in this court Judge Roth was on the bench, and counsel on either side did not call attention to the fact that he had ruled on some questions in the case in the lower court; and that an examination of rulings on preliminary motions set forth in the clerk's transcript were unnecessary to a decision of the questions on appeal; and further, that the several matters in which Judge Roth participated in the lower court occurred nearly three years prior to the date on which the judgment was rendered herein on appeal; that all such rulings that were made by him were in the regular course in his handling of a very busy department of the lower court; and that such rulings were not of that importance that they created any particular impression upon his mind;—as a natural result of which, at the time he prepared the opinion for this court, he had no recollection of the fact that theretofore he had acted judicially in the lower court in any manner as to any question that theretofore had been raised by either of the parties to the litigation.

With so much in explanation, after careful reconsideration of the questions presented on the appeal by the members of this court, it is concluded that in each and every respect the opinion formerly prepared and written by Judge Roth accurately expresses the views of this court with reference to the issues treated in said opinion, and said opinion is now approved and adopted as the opinion of this court. It is as follows:

"Plaintiff and respondent filed a complaint setting forth several causes of action for the recovery of rental in arrears and other charges delinquent and unpaid, pursuant to the terms of three several written leases, executed by it with the defendant and appellant on certain stalls in the Grand Cen-

tral Market in Los Angeles. The complaint was filed on January 6, 1933, and included a demand for rental for the month of January, 1933. Prior to the filing of the complaint, plaintiff on two occasions in the month of December, 1932, separated by an interval of two weeks' time, served upon defendant two several three-day notices to pay rent or quit, said notices affecting all of said leases and the premises therein demised. Defendant ignored each of said notices and did not pay the rent, nor did he quit the premises. On January 4, 1933, which date was subsequent to the expiration of the second of the three days' notice, plaintiff through its counsel wrote a letter to defendant substantially as follows, to-wit:

" 'Some time ago you were served with notice either to pay rent or vacate the stalls now occupied by you in Grand Central Market.

" 'The Public Market feels that as you have been a tenant for such a length of time, they dislike very much to bring suit to remove you from these premises. However, unless you immediately take care of the back rent, I shall commence suit to remove you from these premises.'

"On January 7, 1933, one day after the filing of plaintiff's complaint, defendant quit the premises demised in the several leases. Plaintiff in its complaint, as already suggested, says nothing about the notices to quit or the letter of January 4th. It pleads the several leases executed, the entry thereunder by defendant, the fact that certain rentals and other charges under the lease have not been paid, and requests judgment for the full delinquent amount. The complaint does not ask for a forfeiture of the leases, or any of them, or that defendant be removed from the premises, and under the allegations of the complaint no forfeiture could be legally decreed, nor could defendant be removed. Defendant in his answer sets forth as exhibits the two several three-day notices and the letter, which has been referred to, and avers that he quit the premises pursuant thereto, and that as a consequence thereof the several leases were forfeited or terminated pursuant to the terms of said notices and said letter. Defendant admits that plaintiff is entitled to rentals in arrears, but asserts that plaintiff should not have had judgment for rental for the month of January, as pro-

vided for by the lease, since the lease was terminated when he quit the premises on January 7, 1933.

"One of the leases in question provided, among other things, as follows:

" ' . . . in consideration of the covenants and agreements of the Lessee hereinafter set forth, and the sum of Six Hundred Dollars—Dollars ($600.00) now paid to the Lessor by the Lessee, the receipt whereof is hereby acknowledged, said Lessor does hereby lease and demise unto the Lessee, . . .

" 'The cash payment now made of Six Hundred Dollars ($600.00), shall, in the event of the full and faithful performance of this contract by the said Lessee, be credited in payment of the rent for the last Two (2) months of the said term; otherwise the said payment this day made shall belong to the Lessor as a part of the consideration to it for the execution of this lease. . . . '

"Other paragraphs of the same lease provided that if the lessee shall go into voluntary liquidation and become bankrupt or have receiver appointed, that lessee or his successors would not be entitled to the return of any money theretofore paid to the lessor; and that in the event of the destruction of the premises by fire, and the failure on the part of lessor to restore the same, that the cash payment of $600.00 made would be returned to lessee, on the condition that the lessee were not then in default under the terms of the lease. The other two leases had identical provisions, except that in the second lease the amount of consideration was $2,000.00, and in the third, $400.00. Under the three leases a total consideration of $3,000.00 was thus paid for the execution thereof.

"Defendant, with reference to these payments, contends that they were made by way of security, and that, since the lease was terminated by plaintiff, he is entitled to an offset of $3,000.00 against plaintiff's judgment. The court found in appropriate language that the $3,000.00 paid for the respective leases was by way of consideration for their execution, and not as security for the performance of their terms by defendant. The finding is amply supported by the written terms of the lease itself and by oral evidence on the same subject, which seems to have been given without objection. We are satisfied that the finding and conclusion of the court is correct and is amply sustained by authority. There

is no doubt that money paid as consideration to the lessor for the execution of the lease belongs to the lessor. The fact that the lessor may agree to give the lessee credit for certain final months of the lease, if the lessee observes the covenants thereof, does not change the situation. Title to the money passes to the lessor when the lease is executed. (*Ramish* v. *Workman,* 33 Cal. App. 19, 21, 22 [164 Pac. 26]; *Curtis* v. *Arnold,* 43 Cal. App. 97, 103 [184 Pac. 510]; *Anderson* v. *Julius Levin Co.,* 71 Cal. App. 73, 76 [234 Pac. 442]; *Wetzler* v. *Patterson,* 73 Cal. App. 527, 535, 536 [238 Pac. 1077]; *Wood* v. *Hipwell,* 107 Cal. App. 680, 682, 683 [290 Pac. 1040]; *Harvey* v. *Weisbaum,* 159 Cal. 265, 266, 268 [113 Pac. 656, Ann. Cas. 1912B, 1115, 33 L. R. A. (N. S.) 540].)

■ ''On the first point, lessee's theory seems to be that a notice to pay rent or quit automatically terminates the lease. Such is not the law. (*Costello* v. *Martin Bros.,* 74 Cal. App. 782, 786 [241 Pac. 588].) The lease is terminated only if the notice is acted upon by one of the parties. If the lessor had brought an unlawful detainer suit based upon the notices to quit, as they were framed in this case, then the court trying such unlawful detainer action would, upon a proper showing, have the undoubted right to decree a forfeiture of the lease. (*Ramish* v. *Workman,* 33 Cal. App. 19, 21 [164 Pac. 26]; *Myers* v. *Herskowitz,* 33 Cal. App. 581, 585 [165 Pac. 1031]; *Bonetti* v. *Treat,* 91 Cal. 223, 230 [27 Pac. 612, 14 L. R. A. 151].) Or, if the lessee within the three-day period specified in the notices had quit the premises, the respective lease would have been forfeited by agreement of the parties, since the lessee would be in the position of accepting lessor's offer to terminate the same. (*Costello* v. *Martin Bros.,* 74 Cal. App. 782, 786 [241 Pac. 588]; *Downing* v. *Cutting Packing Co.,* 183 Cal. 91, 96, 97 [190 Pac. 455].)

■ Neither of these methods was followed or taken advantage of by either of the parties. When a lessor, as did the lessor in this case, claims or collects rent in an action, or otherwise, as the result of a legal proceeding, or otherwise, he waives his existing right to effect a termination. The letter of January 4, 1933, which has been substantially excerpted, cannot be considered as a reiteration or extension of either of the previous notices. The object of a notice to quit is to lay the foundation for a forfeiture. The terms of the notice here involved are therefore strictly construed. Its

terms were not extended by the letter, and the respective rights of the parties are governed by the precise terms of the notice. (Code Civ. Proc., sec. 1161, subd. 2; *Redmon* v. *Graham,* 211 Cal. 491, 494 [295 Pac. 1031]; *Downing* v. *Cutting Packing Co.,* 183 Cal. 91, 95 [190 Pac. 455].)''

For the reasons stated in the foregoing opinion it is ordered that the judgment be, and it is, affirmed.

York, J., and Doran, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 13, 1936.