Filed 12/4/25  3280 International v. Hernandez CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| 3280 INTERNATIONAL LLC,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOSE CARLOS HERNANDEZ et al.,<br><br>        Defendants and Appellants. | A172313<br><br><br>(Alameda County<br>Super. Ct. No. 24CV082260) |

Jose Carlos Hernandez and Miriam L. Castillo (defendants) appeal an unlawful detainer judgment that requires them to pay past due rent and holdover damages to their landlord, 3280 International LLC.  Defendants argue the lease was forfeited when they refused to vacate the premises after receiving a three-day notice to pay rent or quit the premises in 2019.  They also make various arguments that the lease agreement was unenforceable so they had no obligation to pay rent.  We affirm.

**BACKGROUND**

The history of this case entails numerous unlawful detainer and breach of contract disputes arising out of the parties' January 2015 agreement leasing commercial property (lease agreement) in Oakland.  Rent was $3450 per month, and the lease agreement noted that failure to make a payment of rent would constitute a material default and breach.  It also stated that 3280

1

International would default if it failed to perform its obligations under the lease agreement, such as repairing damage not caused by the lessee.

In February 2019, 3280 International filed a complaint against defendants, arguing they breached the lease agreement by failing to pay rent. Defendants disagreed, arguing the premises could not be used for the commercial use contemplated by the parties — a restaurant — because there were significant unforeseen and hidden plumbing and electrical problems. They accordingly filed a cross-complaint against 3280 International for breach of contract and fraud. The trial court denied both parties relief. It found 3280 International breached the lease agreement because the premises could not be used for *any* commercial purpose, and 3280 International had refused to make repairs. Similarly, it found defendants breached the lease agreement because they withheld payment of rent while repairing the premises, even though that was not a remedy available to them. Moreover, they did not pay rent until long after any reasonable repairs should have been completed. In a statement of findings, the court found "there is no enforceable lease agreement." But it clarified that rent was not due until the repairs were completed and the commercial premises could be used as contemplated under the lease. Thus, it determined defendants were required to pay rent after repairs were completed, sometime before May 2016. Neither party was awarded damages.

In December 2019, 3280 International provided defendants with a three-day notice, stating "WITHIN THREE DAYS after service of this notice on you, you are required to pay rent in full, or to deliver up possession of the premises." The notice continued, "[f]ailing this, legal proceedings will be commenced against you to recover possession of the premises, together with court costs, attorney fees and other similar charges. Your lease agreement

2

will also be forfeited." Defendants did not pay within three days or surrender the premises. Later, 3280 International filed an unlawful detainer action seeking past due rent and the fair daily rental value of the property. The parties settled; defendants agreed to pay approximately $18,000, and the trial court dismissed the case with prejudice after 3280 International received payment. Defendants remained on the property.

In 2022, 3280 International filed another unlawful detainer action. Defendants moved for judgment on the pleadings, arguing there previously had been a determination the lease agreement was unenforceable, hence the action was barred by claim and issue preclusion.[1] The trial court denied the motion, explaining the prior determination simply meant the lease was voidable. There was no suggestion in the record that defendants or the court terminated, rescinded, or voided the lease. Indeed, while the lease was "unenforceable for the time periods at issue in the prior case," the prior decision "did not render the lease unenforceable going forward." The court further reasoned that the unenforceability finding was not necessary to the judgment, thus it had no preclusive effect.

It appears defendants continued to remain in possession of the property — 3280 International filed another unlawful detainer action in 2023, attempting to evict defendants for violations of the Oakland Municipal Code and for failure to cure the violations after being served with a three-day notice to perform conditions or quit. This attempt similarly failed as the trial court found the three-day notice was invalid for failing to provide any detail regarding the nature of defendants' breach.

---

[1] Although the parties use the term "res judicata," we use the preferred term "claim preclusion." (*Samara v. Matar* (2018) 5 Cal.5th 322, 326 [noting the preferred practice of referring to "claim preclusion" rather than "res judicata"].)

That brings us to the present dispute. In June 2024, 3280 International yet again served defendants with a three-day notice, seeking approximately $53,000 in past due rent or delivery of possession of the premises. The next month, it filed an unlawful detainer action for past due rent, attorney fees, forfeiture of the lease agreement, and damages — the fair rental value of the premises per day. Defendants moved for judgment on the pleadings. They argued the three-day notice was deficient because the lease was unenforceable. They reasoned that their failure to pay rent or quit the premises after receiving the December 2019 three-day notice terminated the lease. As a result, they were not "obligated to pay any amount of rent." They further argued the lease was void for lack of a certificate of occupancy.

The parties had a bench trial, though there is no transcript of the proceedings. In its statement of decision, the trial court recounted the testimony of a 3280 International manager, who noted the company did not possess a copy of the certificate of occupancy for the premises, but city officials issued one about 100 years ago. He also testified that he went to the City of Oakland to obtain a copy of the certificate of occupancy. At that time, city officials told him one had already been issued, but they could not find it. In addition, the City of Oakland sent him a letter stating a certificate of occupancy should have been issued in the late 1920s upon approval of a final inspection of the original construction, but a record of that could not be found.

The trial court denied defendants' motion for judgment on the pleadings, explaining that a notice to pay rent or quit does not automatically forfeit the lease agreement. It also determined defendants failed to demonstrate that no certificate of occupancy was ever issued. It concluded 3280 International established defendants were guilty of unlawful detainer,

4

and it awarded approximately $53,000 in past due rent, $17,000 in holdover damages, as well as attorney fees and costs.

## DISCUSSION

The Unlawful Detainer Act articulates "the procedure for landlords and tenants to resolve disputes about who has the right to possess real property." (*Stancil v. Superior Court* (2021) 11 Cal.5th 381, 394.) "Given the need for quick, peaceful resolutions of unlawful detainer actions, the statutory procedures must be strictly adhered to, including the stringent requirements for service, notice, and filing deadlines." (*Id*. at pp. 394–395.) A tenant is guilty of unlawful detainer by continuing to possess rental property "without the permission of the landlord after default" in rental payments. (*City of Alameda v. Sheehan* (2024) 105 Cal.App.5th 68, 75; Code Civ. Proc., § 1161, subd. (2); undesignated statutory references are to this code.) In those circumstances, the landlord must serve a valid three-day notice to pay rent or quit the premises before filing an unlawful detainer action. (*Sheehan*, at p. 75.) Thus, the elements for demonstrating unlawful detainer for nonpayment of rent are: tenant in possession of premises; "possession is without permission;" "tenant is in default for nonpayment of rent;" "the tenant has been properly served with a written three-day notice;" and "default continues after the three-day notice period has elapsed." (*Kruger v. Reyes* (2014) 232 Cal.App.4th Supp. 10, 16.)

Defendants offer various arguments in response to the judgment — they owe no rent because the lease agreement was forfeited in a prior breach of contract action, the lease was unenforceable as violating municipal codes, and a trial court previously found the lease unenforceable. Reviewing an unlawful detainer judgment requires examining the court's factual findings

5

for substantial evidence — considering the evidence in the light most favorable to the prevailing party, liberally construing factual findings to support the judgment, and drawing all reasonable inferences in support of the findings. (*Palm Property Investments, LLC v. Yadegar* (2011) 194 Cal.App.4th 1419, 1425; *Durante v. County of Santa Clara* (2018) 29 Cal.App.5th 839, 842.) We independently review the court's conclusions of law. (*Palm Property Investments, LLC*, at pp. 1425–1426.) After reviewing each argument under these standards, we find no basis to reverse.

## I.

Defendants contend the 2024 three-day notice was invalid because it sought past due rent based on a forfeited lease agreement. (*Borsuk v. Appellate Division of Superior Court* (2015) 242 Cal.App.4th 607, 611 [" ' "[p]roper service on the lessee of a valid three-day notice to pay rent or quit is an essential prerequisite to a judgment declaring a lessor's right to possession" ' " under § 1161, subd. (2)].) Relying on language in the December 2019 three-day notice letter — in the event of the failure to pay rent in full or deliver possession of the premises, "Your lease agreement will also be forfeited" — defendants argue their lease automatically terminated when they remained in possession despite failing to pay rent. Because there was no lease agreement, they argue, 3280 International could not file an unlawful detainer action to recover possession and damages under the terminated lease agreement.

We disagree. Section 1161 does not provide a statutory substantive forfeiture right. (*Boston LLC v. Juarez* (2016) 245 Cal.App.4th 75, 80.) Rather, the " 'purpose of the unlawful detainer statutes is procedural. The statutes implement the landlord's property rights by permitting him to recover possession once the consensual basis for the tenant's occupancy is at

6

an end.'" (*Foster v. Britton* (2015) 242 Cal.App.4th 920, 930.) Indeed, as defendants note, an unlawful detainer action is not authorized until after a tenancy has been terminated. (*Highland Plastics, Inc. v. Enders* (1980) 109 Cal.App.3d Supp. 1, 7.) But as the trial court explained, a notice to pay rent or quit does not automatically *forfeit* the lease. The "lease is terminated only if the notice is acted upon by one of the parties."[2] (*Grand Central Public Market v. Kojima* (1936) 11 Cal.App.2d 712, 717.) For example, if defendants quit the premises after receiving the three-day notice, the lease would have been terminated since they "would be in the position of accepting [3280 International's] offer to terminate" the agreement as indicated in the notice. (*Ibid*.) Or, by bringing an unlawful detainer action based on the notice to pay or quit, the court "would, upon a proper showing, have the undoubted right to decree a forfeiture of the lease." (*Ibid*.)

Here, however, 3280 International brought an unlawful detainer suit in 2019 against defendants following their inaction after receiving a three-day notice to pay rent or quit the premises. But the parties settled that action after defendants agreed to pay approximately $18,000 in past due rent. After 3280 International received payment, the trial court dismissed the pending unlawful detainer action with prejudice. We thus reject defendants' argument that the lease was forfeited by operation of law. (*Grand Central Public Market v. Kojima, supra*, 11 Cal.App.2d at p. 717.) "When a lessor, as did the lessor in this case, claims or collects rent in an action, or otherwise, as the result of a legal proceeding, or otherwise, he waives his existing right to

---

[2] Though the trial court determined the lease was not forfeited here because there was no judgment making such finding, resolving this issue is unnecessary. We "may affirm a trial court judgment on any basis presented by the record whether or not relied upon by the trial court." (*Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 252, fn. 1.)

effect a termination." (*Ibid*.)  Instead, the lease agreement "remained in force as completely as if no proceedings for forfeiture had been begun." (*Downing v. Cutting Packing Co.* (1920) 183 Cal. 91, 97.)

Defendants' additional arguments based on their assertion that the 2019 unlawful detainer action terminated the lease agreement — that the trial court adjudged the lease was terminated and that issue and claim preclusion bar any future action based on that lease agreement, and that 2024 three-day notice does not provide sufficient notice of the reasonable amount of rent because there was no lease agreement — fail for the same reasons.  Moreover, unlawful detainer judgments arise from summary proceedings generally "limited to resolution of the question of possession," thus they usually have limited preclusive effect. (*Malkoskie v. Option One Mortgage Corp.* (2010) 188 Cal.App.4th 968, 973.)  Indeed, we see nothing in the record indicating the parties actually litigated, and the court necessarily determined, the issue justifying issue preclusion here. (*Ayala v. Dawson* (2017) 13 Cal.App.5th 1319, 1329.)

## II.

Defendants also contend the lease is unenforceable because 3280 International lacked a certificate of occupancy for the premises as required under the Oakland Municipal Code, an affirmative defense to an unlawful detainer action. (*Gruzen v. Henry* (1978) 84 Cal.App.3d 515, 517, 519 [landlord entitled to order of eviction but not award of past due rent where leased property lacked certificate of occupancy].)  Characterizing the testimony of 3280 International's manager as obfuscating, and arguing the trial court's failure to take judicial notice of a prior opinion summarizing testimony from a City of Oakland employee regarding the certificate of occupancy, defendants insist insufficient evidence supports the trial court's

8

determination on the issue. They also argue the court erred by placing the burden on them for this affirmative defense. None of these arguments persuade.

As a preliminary matter, tenants generally have the burden of demonstrating the existence of an affirmative defense — such as the lack of a certificate of occupancy — in an unlawful detainer action. (*Espinoza v. Calva* (2008) 169 Cal.App.4th 1393, 1399; *Western Land Office, Inc. v. Cervantes* (1985) 175 Cal.App.3d 724, 731; Evid. Code, § 500 ["Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting"].) Defendants identify nothing in the Civil Code assigning the burden of proof to the landlord. (*Cervantes*, at p. 731 [examining whether tenant raising affirmative defense of retaliatory eviction under Civ. Code, § 1942.5 must bear the burden of proof as required under Evid. Code, § 500]; *Espinoza*, at pp. 1398–1399.) And we see nothing in the Oakland Municipal Code provisions governing certificates of occupancy or other building obligations cited by defendants placing the burden on landlords.

More importantly, the record is inadequate to show the evidence insufficiently supports the trial court's conclusion that the lease was not void or unenforceable for lack of a certificate of occupancy. (*Durante v. County of Santa Clara*, *supra*, 29 Cal.App.5th at p. 842.) We presume the judgment is correct, and all " ' "intendments and presumptions are indulged to support it on matters as to which the record is silent." ' " (*Conservatorship of Rand* (1996) 49 Cal.App.4th 835, 841.) The court made detailed findings regarding the certificate of occupancy based on the testimony of 3280 International's manager — that city officials stated the certificate of occupancy "had been issued but could not now be found." The manager acknowledged the City of

9

Oakland sent him a letter — which was admitted into evidence — stating that a certificate of occupancy should have been issued in the late 1920s upon approval after final inspection of the original construction. The letter states there does not appear to be any revocation or suspension on the building occupation. The court also noted defendants "submitted very little to no evidence that no certificate of occupancy was ever issued." The record before us — lacking a reporter's transcript — omits all the testimony upon which the court based its findings. We thus presume the evidence supports the court's determination. (*National Secretarial Service, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510, 522; *In re Silva* (1931) 213 Cal. 446, 448 ["Without the benefit of the entire record, we cannot say that the evidence is insufficient to support the finding"].)

Relying on their own summary of the bench trial testimony, defendants attempt to demonstrate the manager's answers regarding the existence of the certificate of occupancy were obfuscating and demonstrated 3280 International did not have the requisite certificate. This approach is not well taken. We do not reassess credibility when reviewing a judgment for substantial evidence. (*Bruno v. Hopkins* (2022) 79 Cal.App.5th 801, 823.) Moreover, appellants generally must provide a reporter's transcript when necessary for appeal. (*Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125.) They did not, and by failing " 'to support an argument with the necessary citations to the record,' " we may deem the argument forfeited.[3] (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.)

We also reject defendants' assertion that the trial court erred by denying their request to take judicial notice of a 2023 court opinion

---

[3] Until recently, appellants represented themselves in this appeal. Counsel substituted in only after the appeal was fully briefed.

summarizing the testimony of a City of Oakland employee as evidence of the lack of the certificate of occupancy. While courts may take judicial notice of the existence of judicial opinions and the results reached therein, they "cannot take judicial notice of the truth of hearsay statements in decisions or court files, including pleadings, affidavits, testimony, or statements of fact." (*Williams v. Wraxall* (1995) 33 Cal.App.4th 120, 130, fn. 7; Evid. Code, §§ 452, 453.)

## III.

Defendants argue language in the 2019 statement of decision resolving the parties' breach of contract complaints — "there is no enforceable lease agreement" — demonstrates the lease agreement is unenforceable We disagree. The statement of decision stated that rent was not due *until* these repairs were completed and the commercial premises could be used as contemplated under the lease agreement. Thus, defendants were required to pay rent after repairs were completed, sometime before May 2016. Reading the quoted phrase in context, we understand the trial court to have deemed the lease agreement unenforceable *during those time periods at issue* in the breach of contract cases, not prospectively. Indeed, consistent with this interpretation, the same court subsequently acknowledged that, while the 2019 decision described "the lease as unenforceable, it would have been more precise to say that the lease was voidable." "Although the lease was unenforceable for the time periods at issue in the prior case," the "Statement of Decision did not render the lease unenforceable going forward." The 2019 statement of decision does not absolve defendants of their obligation to pay rent, contrary to their assertions.

11

IV.

Defendants argue the trial court erred by awarding 3280 International holdover damages because the lease agreement does not contain a holdover provision. No such provision is necessary. "[L]osses sustained after termination of a tenancy may be recovered" as damages — "the reasonable value of the use of the premises during the time of the unlawful detainer either on a tort theory or a theory of implied-in-law contract." (*Adler v. Elphick* (1986) 184 Cal.App.3d 642, 649.) We also reject defendants' suggestion that holdover damages were not at issue here. The unlawful detainer complaint expressly requested holdover damages calculated as the fair rental value of the premises of $147.99 per day.

## DISPOSITION

The judgment is affirmed. In the interests of justice, the parties are to bear their own costs. (Cal. Rules of Court, rule 8.278(a)(5).)

_____
RODRÍGUEZ, J.

WE CONCUR:

_____
FUJISAKI, Acting P. J.

_____
PETROU, J.

A172313; 3280 *Internat. LLC v. Hernandez*