[No. E001967. Fourth Dist., Div. Two. May 6, 1986.]

DESERT PLAZA PARTNERSHIP, Plaintiff and Respondent, v.
R. DUKE WADDELL et al., Defendants and Appellants.

806

COUNSEL

Alfred J. Gergely for Defendants and Appellants.

Mack, Kahn & Criste and L. Barry Mack for Plaintiff and Respondent.

OPINION

KAUFMAN, Acting P. J.—Defendants R. Duke Waddell and Shirley Waddell (defendants or the Waddells) appeal from a judgment in favor of Desert Plaza Partnership (Desert Plaza or plaintiff) under Civil Code section 1951.2[1] for rents in the amount of $11,494, unpaid common area charges in the amount of $5,004.21, and a closing water bill of $12.40 together with interest in the amount of $4,014.46, attorney fees of $5,040 and litigation expenses of $313.23.

*Facts*

On about July 8, 1977, a lease was executed between Home Savings and Loan Association as lessor and defendants as lessees whereby defendants

---

[1]All statutory references will be to the Civil Code unless otherwise specified.

leased a store in the Desert Inn Fashion Plaza, a shopping center in Palm Springs. The business operated in the store was known as Optique Unique.

Thereafter Home Savings and Loan Association sold the shopping center to Desert Plaza Partnership, plaintiff herein, and Desert Plaza assumed all rights and responsibilities of the lessor under the July 8, 1977, lease.

Article XXI of the lease provided in section 21.01 in pertinent part: "Should Lessee at any time be in default hereunder with respect to any rental payments or other charges payable by Lessee hereunder, and should such default continue for a period of fifteen (15) days after written notice thereof from Lessor to Lessee, . . . then . . . in addition to any or all other rights or remedies of Lessor hereunder and/or by law provided, it shall be at the option of Lessor: [¶] (a) The right of Lessor *to declare the term hereof ended and to re-enter* upon the Premises *and take possession thereof* and remove all persons therefrom; *or,* [¶] (b) The right of Lessor *without declaring this lease ended to re-enter* upon the Premises *and occupy or lease the whole or any part thereof for and on account of Lessee* and upon such terms and conditions and for such rent as Lessor may reasonably be able to obtain . . . and should such rental be less than that herein agreed to be paid by Lessee, Lessee agrees to pay such deficiency to Lessor in advance on the day of each month hereinbefore specified for payment . . . ." (Italics added.)

Mr. and Mrs. Waddell were seldom personally present at the store; it was principally operated by others including an optometrist named Thorsness. He operated the business during 1981 and 1982 until the beginning of December 1982. At that time, without giving any notice to the Waddells, Thorsness stopped operating the business, locked the doors and disappeared. Sometime later the Waddells received a notice of Thorsness's bankruptcy.

On December 3, 1982, Desert Plaza served a notice to pay rent or quit on defendants. It was signed on behalf of Desert Plaza by Marjorie Taft and stated in pertinent part that defendants were required within 10 days to pay the sum of $821[2] or deliver up possession of the premises to Desert Plaza's agent Marjorie Taft and that otherwise Desert Plaza would institute legal proceedings against defendants to recover possession and to declare the forfeiture of the lease under which the premises were occupied. The notice further stated: "You are further notified that the undersigned does hereby

---

[2]The $821 consisted of base rent of $800, parking charges of $7.50 and mall reimbursement charges of $13.50, all of which were said to be due December 1, 1982, together with interest at the rate of 8 percent from December 2, 1982.

elect to declare the forfeiture of your Lease or Rental Agreement under which you hold possession of the above described premises."

On December 13, 1982, defendants through Attorney Alfred J. Gergely responded to the notice to pay rent or quit in a letter addressed to Desert Plaza directed to the attention of Marjorie Taft. The letter read in relevant part: "I represent Duke Waddell and Shirley Waddell lessees under the lease dated July 8, 1977 . . . . You served Notice to Pay Rent Or Quit dated December 3, 1982, upon my clients wherein you demanded 'rent and other sums for the premises' amounting to $821.00. . . . [¶] The Notice also contained the election of the landlord to declare the forfeiture of the lease under which my clinets [*sic*] hold possession of the premises. [¶] *My clients have elected not to pay the rent and to accept your offer to terminate the lease.* My clients have vacated the premises as of December 13, 1982, and have left the key at your office." (Italics added.)

Under date of December 20, 1982, without any intervening communication so far as the record discloses, Attorney L. Barry Mack of Mack & Kahn, attorneys for Desert Plaza, wrote to defendants through attorney Gergely stating that Gergely's letter of December 13 and the enclosed notice to pay rent or quit had been reviewed and, further: "*I concurr* [*sic*] *with your analysis that neither of our clients has any obligations to each other from and after the middle of December, 1982.* I do believe, however, that your clients are obligated to pay all monies due under the lease up through the middle of December of 1982, notwithstanding the language in the Notice to Pay Rent or Quit. [¶] As soon as our client has had an opportunity to compute the precise number of dollars owed for rent, common area expenses, parking charges, or current mall reimbursement charges, *we will be sending you a demand letter for that sum of money.*" (Italics added.)

In a letter to Desert Plaza's attorney dated December 22, 1982, defendants' attorney asserted the notice to pay rent or quit had fixed the amount owing at $821 and that "my clients will resist any attempts to collect any additional amounts from them."

No further communication took place between the parties or their attorneys until this lawsuit was filed on February 14, 1984. There was never any further demand for payment made upon defendants nor did Desert Plaza ever disclaim or repudiate the statement in its attorneys' letter concurring that neither party had any further obligation to the other for periods after mid-December 1982. Nevertheless, in its complaint Desert Plaza claimed the right to rent and common area charges not just to the middle of December 1982 but through December 31, 1983, alleging: "Plaintiff undertook all reasonable efforts to relet the subject premises from and after December

1982, when defendants terminated their leasehold interest in the premises. Notwithstanding plaintiff's reasonable efforts to relet the premises, they were unable to do so prior to January, 1984, as a result of which plaintiff is entitled to all monies due to it under the terms of the lease for the period up through and including December 31, 1983."

In their answer to the complaint defendants asserted as separate affirmative defenses, in substance, that a contract had been entered into between the parties cancelling the lease and relieving defendants of any liability for rent or other charges after December 13, 1982; that by virtue of its representation to defendant that plaintiff was electing to terminate the lease in accordance with its rights under the lease, plaintiff was estopped from asserting any right to rents or other charges after December 13, 1982; or that by virtue of its election to forfeit the lease and the subsequent letter of its attorneys it had waived any right to such rents or charges.

Trial was to the court and the court ultimately gave judgment for plaintiff as previously indicated. Defendants requested a statement of decision, enumerating among others the following issues it desired to be covered: whether or not plaintiff's service of the notice to pay rent or quit dated December 3, 1982, constituted an election by plaintiff pursuant to section 21.01(a) of the lease to declare the lease terminated; whether or not defendants elected to vacate the premises based upon the service upon them of the notice to pay rent or quit; whether or not defendants reasonably relied on plaintiff's representation that the lease was to be terminated as stated in the notice to pay rent or quit; whether or not the language of the notice to pay rent or quit constituted an offer to cancel the lease if defendants quit the premises within the 10 days specified; whether defendants' letter through counsel dated December 13, 1982, and their quitting the premises within the 10 days specified by plaintiff constituted an acceptance of such offer; and, even if no contract was formed, whether by the language of its notice to pay rent or quit and its subsequent conduct plaintiff waived or was estopped to assert any right to rent for other charges or any period after December 13, 1982.

The court's statement of decision read in pertinent part: "Notwithstanding . . . efforts on the part of plaintiff, which fulfilled plaintiff's obligations to utilize all reasonable efforts to mitigate their damages, plaintiff was unable to procure a new rent paying tenant until December of 1983, at which time a new tenant was procured having a rental obligation commencing January 1, 1984. [¶] Plaintiff is entitled to all money due under the lease up to January 1, 1984.

" . . . . . . . . . . . . . . . . . . . . .

"Under . . . *Danner* v. *Jarrett* (June 22, 1983) 144 Cal.App.3d 164, 192 Cal.Rptr. 535, and under the provisions of Civil Code Section 1951.2, plaintiff is entitled to recover all of these sums from defendants notwithstanding the termination of the landlord/tenant relationship in December of 1982. This is true notwithstanding the election by plaintiff, in its notice to pay or quit, of a forfeiture of the leasehold interest of defendants in the subject premises.

". . . Civil Code Section 1951.2 makes it clear that the forfeiture of a leasehold interest, rather than terminating any further rights between the parties, triggers the provisions of Section 1951.2 of the Civil Code, which in part deals with the measure of damages to which a landlord is entitled 'after termination' and 'for the balance of the term' of a lease.

"Given the rights vested in plaintiff, in this fact situation and under the provisions of *Danner* and Civil Code Section 1951.2, plaintiff's conduct in giving the notice to pay rent or quit, or the conduct of plaintiff's counsel after the defendants had turned in the keys and indicated they were not returning, regarding no further liability, are of no help to defendants in this case. Neither the conduct of the plaintiff, nor of its counsel, in any way constituted a waiver of plaintiff's rights under the terms of the lease.

"Defendants cannot . . . claim to be relieved of any further responsibilities under the lease in reliance on the notice to pay or quit. The forfeiture of the leasehold interest does not and did not operate to terminate all financial obligations in favor of plaintiff from defendants.

"The issue of detrimental reliance raised by defendants is not of significance in determining the rights and responsibilities of the parties in this case. Those rights are set forth by the lease, the *Danner* decision, and Civil Code Section 1951.2. Detrimental reliance, the reasonableness of that reliance, the appropriateness of that reliance, if any, simply do not matter."

### Contentions and Discussion

█ On appeal defendants advance essentially the same contentions they made in the trial court, namely, that the evidence establishes a contract between the parties for cancellation of the lease, relieving defendants of any further obligations under the lease or, alternatively, that plaintiff's words and conduct either estops it from asserting the right to rents and other charges for any period after December 13, 1982, or constitutes a waiver of any such rights.[3] Although plaintiff argues the effect of the evidence as

---

[3]Defendants do not contest on appeal and invite this court to direct the entry of judgment for the items attributable to the period before December 13, 1982: common area charges of $5,004.21; rent for November and the first half of December 1982; and the closing electric bill of $12.40, all of which totals $6,248.11.

though it compelled the trial court's conclusions as a matter of law, plaintiff states the issue on appeal is whether substantial evidence exists to support the judgment and urges it does.

Neither party is quite correct. The evidence does not establish either a contract, estoppel or waiver or the absence thereof as a matter of law, but neither is the issue substantial evidence. The trial court employed an erroneous legal hypothesis in reaching its conclusions which in effect precluded it from determining the defenses proffered by defendants. The court reasoned that since forfeiture of the lease and termination of the lessee's right to possession do not end the lessee's obligations under Civil Code section 1951.2, plaintiff had the right to recover under that section and that the evidence and arguments presented by defendants could not, as a matter of law, change the result. As we shall explain that was not correct.

Although defendants frequently employed the word "forfeited" in their papers, they were in fact contending and, indeed, presented considerable evidence tending to show that by their words and conduct the parties had agreed to a cancellation of the lease relieving defendants of further liability or that, even in the absence of a contract for cancellation, plaintiff was estopped by its words and conduct to claim or had waived any right to damages under section 1951.2. As is evident from its statement of decision, however, the trial court did not really reach these contentions, believing them to be "of no help to defendants" and "not of significance in determining the rights and responsibilities of the parties."[4]

It is true of course that a lessor's election to forfeit the lessee's rights under a lease because of the lessee's default, or even a judgment in unlawful detainer declaring a forfeiture of the lessee's rights, does not relieve the lessee of the obligations imposed by the lease. That is the precise effect of section 1951.2 and the precise holding of the court in *Danner* v. *Jarrett* (1983) 144 Cal.App.3d 164, 166-167 [192 Cal.Rptr. 535]. (See also Code Civ. Proc., § 1174.5.) ▆▆▆ As the *Danner* court explained, the enactment of section 1951.2 was "an . . . attempt to engraft the contract remedy of loss of bargain onto real property law. (Recommendation Relating to Real Property Leases (Nov. 1969) 9 Cal. Law Revision Com. Rep. (1969) appen. IV, pp. 157-163.) *It abrogates the common law rule that the lessee's ob-*

---

[4]Although the court did state plaintiff's words and conduct did not constitute a waiver of its rights under section 1951.2, that statement rather clearly did not represent a factual determination but only a conclusion that in view of section 1951.2 the lessor's election to declare a "forfeiture" of the lease as a matter of law could not constitute a waiver of rents for the balance of the term of the lease.

Moreover, although specifically requested both in defendants' original request and their later objections to the proposed statement of decision, the court did not purport to find as a matter of fact that there was no contract for cancellation or estoppel.

*ligation to pay rent depends on the continued existence of the term.*" (*Id.,* 144 Cal.App.3d 164, 166-167, italics in original; see also 3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, § 518, pp. 2191-2193.)

 However, neither section 1951.2 itself nor the *Danner* decision in any way dealt with the right of the parties to enter into a consensual arrangement relieving the lessee of further obligation under the lease in exchange for the lessee's voluntarily quitting the premises or other consideration, nor with any claim the words or conduct of the parties resulted in an estoppel to assert or a waiver by the lessor of the right to rents under the lease for periods after the surrender of the premises by the lessee. The question presented by this case is whether notwithstanding section 1951.2 the parties may so agree or by words and conduct the lessor may waive or be estopped to assert its rights under section 1951.2. Clearly, the answer is yes.[5]

 In the first place reason dictates that answer. It would be unjust, indeed unconscionable to permit a lessor to induce the lessee to change position materially or give up substantial rights by promising to release the lessee from further obligation and then permit the lessor to recover rents for the remainder of the term. Also, although not at issue in this case, we observe that section 1951.2 puts the lessee at a considerable procedural disadvantage in respect to the issue of mitigation of damages. The burden is placed on the lessee to prove the lessor's conduct in attempting to relet was less than reasonable. However, exclusive possession and control of the premises and exclusive control over reletting efforts, including the knowledge of what efforts have or have not been made, are given exclusively to the lessor. If avoidable conduct of the lessor should make it impossible for the lessee to prove or severely impair the lessee's ability to prove the property could have been relet with reasonable efforts, for example, should the lessor keep no record of the opportunities and efforts to relet the premises or should the lessor engage in conduct making the premises unavailable for reletting for a significant period of time during which a new tenant might have been obtained, ordinary principles of equitable estoppel and waiver must be available in appropriate cases so that gross injustice may be avoided.

A consideration of what authority exists leads to the same conclusion. The Recommendation of the California Law Revision Commission Relating to Real Property Leases which led to the enactment of section 1951.2 contained a draft of the section recommended for adoption which contained

---

[5]Indeed, at oral argument, plaintiff's counsel candidly conceded an agreement of the parties would be a valid theoretical possibility.

virtually identical language to that subsequently enacted by the Legislature. (See Reports, Recommendations and Studies (1968-1969) 9 Cal. Law Revision Com. Rep. (1969) pp. 413-414.) In its comment concerning section 1951.2 the commission stated in relevant part: "Section 1951.2 is not a comprehensive statement of the lessor's remedies. When the lessee breaches the lease and abandons the property or the lessor terminates the lessee's right to possession because of the lessee's breach, *the lessor may simply rescind or cancel the lease without seeking affirmative relief under the section.*" (*Id.,* at p. 416, italics added.) Precisely the same thing is said in the comment of the Assembly Legislative Committee following section 1951.2. (10 West's Ann. Civ. Code (1985 ed.) p. 354, 357; Deering's Ann. Civ. Code (1981 ed.) p. 515 et seq.)

Manifestly, the purpose of section 1951.2 was to afford an additional remedy to lessors and at the same time impose upon lessors the duty to mitigate damages by attempting to relet the premises. In imposing the duty to mitigate damages it was necessary to guard against the lessor's *unintentional waiver* of the new remedy simply by engaging in efforts to relet the premises (see legis. committee com. to § 1951.2, 10 West's Ann. Civ. Code, p. 354, 357; Deering's Ann. Civ. Code, p. 515; Recommendations Relating to Real Property Leases (Oct. 1968) 9 Cal. Law Revision Com. Rep. (1969) p. 416), but it was no part of the purpose of the statute to preclude consensual arrangements between the parties for cancellation of the lease nor generally to make inapplicable well-established principles of waiver or estoppel.

■ Here section 21.01 of the lease purported to give the lessor alternative remedies, and the notice to pay rent or quit was certainly susceptible to the interpretation Desert Plaza was electing to end the lease under subdivision (a) of section 21.01. (See *Grand Central Pub. Market* v. *Kojima* (1936) 11 Cal.App.2d 712, 717 [54 P.2d 786].) The language of the letter of December 20, 1982, from Desert Plaza's attorney was further evidence that was plaintiff's intention. Additional evidence that that was plaintiff's intention is found in the facts that no demand was ever made on defendants for payment of further rents before this action was filed, and that plaintiff never notified defendants prior to suit that it no longer agreed with the statement in the letter of its attorney that neither party was further obligated after mid-December 1982. Perhaps the most revealing evidence was introduced by plaintiff itself. Plaintiff introduced a statement it had prepared (but not sent to defendants) on December 26, *1983,* with respect to the common area charges it claimed defendants owed in the amount of $5,004.21, which is the amount awarded by the court. But the statement included no charges for the period after mid-December 1982, notwithstanding it was dated December 26, 1983.

Manifestly, although we cannot say the evidence establishes them as a matter of law, the evidence was amply sufficient to support the asserted defenses of consensual cancellation, waiver or estoppel, and if any of the three were determined to exist, defendants would be entitled to prevail except to the extent that they admit liability for the period preceding December 13, 1982. Because of the court's erroneous conclusion that section 1951.2 made their existence immaterial and inconsequential, however, these defenses were never really tried. Reversal of the judgment is therefore required unless plaintiff is willing to accept judgment for the amounts accrued prior to December 13, 1982, which defendants do not contest on appeal (see fn. 3, *ante*).

### *Disposition*

If plaintiff shall serve by mail and file with the clerk of this court within 15 days after the date this opinion is filed a consent to reduction of the judgment to $6,248.11 plus interest thereon at the rate of 8 percent per annum from and after December 14, 1982 (defendants' reasonable and necessary attorney fees on appeal being deemed equal to plaintiff's reasonable and necessary attorney fees in securing the judgment as modified), the judgment is hereby modified to award plaintiff $6,248.11 plus said interest, and as thus modified, is affirmed with each party to bear their own respective costs and attorney fees on appeal.

Otherwise the judgment is reversed in its entirety, the case is remanded for retrial, and defendants shall recover their costs on appeal together with reasonable attorney fees on appeal in the sum of $3,000.

McDaniel, J., and Taylor, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.