[No. A055319 First Dist., Div. Two. Aug. 26, 1992.]

FRANKLIN C. WALT et al., Petitioners, v.
THE SUPERIOR COURT OF SONOMA COUNTY, Respondent;
JOHN J. CLEMENT, Real Party in Interest.

Counsel

Anderson, Zeigler, Disharon & Gray and Tricia A. Shindledecker for Petitioners.

No appearance for Respondent.

Greve, Clifford, Diepenbrock, Paras, Irving H. Perluss, Richard L. Manford, and Lesley Ann Clement, for Real Party in Interest.

Opinion

KLINE, P. J.—Petitioners Franklin C. Walt et al., are plaintiffs in an action filed against real party in interest John J. Clement concerning a commercial lease of real property. Summary adjudication of issues was granted in favor of Clement as to three of the four causes of action alleged in the complaint. Petitioners seek a writ of mandate commanding the superior court to set aside its order granting Clement's motion for summary adjudication.

FACTUAL BACKGROUND

On April 4, 1984, petitioners as owners of commercial property in Sonoma County, entered into a written lease agreement with Clement for a term of five years extending through May 14, 1989. Commencing in May 1986 and continuing through November 1986, Clement failed to make his monthly rental payment. On November 24, 1986, petitioners served upon Clement a three-day notice to pay rent in full or quit which demanded $25,603.68 in past due rent or surrender of the premises. The notice stated, "YOU ARE FURTHER NOTIFIED THAT, the undersigned does hereby elect to declare the forfeiture of your Lease Agreement under which you hold possession of the above-described premsies [*sic*], and (LANDLORD) will institute legal proceedings to recover rent and possession of said premises with such other damages as may be allowed by law."

Clement did not pay all past due rent within three days or surrender possession of the premises. He devised a plan to pay the rent past due and continued to occupy the premises until April 15, 1988. During the period November 24, 1986, until April 15, 1988, Clement and petitioners entered into discussions, negotiations and attempts to sublet a portion of the premises to a third party (Annette's). These negotiations were unsuccessful. On April 15, 1988, Clement abandoned the premises some 13 months before expiration of the original lease term.

On December 18, 1989, petitioners filed a complaint for damages for breach of contract (the 1984 lease), waste, breach of contract (an alleged lease entered into on or about October 20, 1987), and bad faith denial of the existence of a contract (the 1984 lease and the alleged 1987 lease).

On June 5, 1991, Clement moved for summary adjudication of issues alleging that three of the four causes of action were without merit. As to the cause of action for breach of the 1984 lease, Clement contended that petitioners' three-day notice to quit terminated the lease and the occupancy became a month-to-month tenancy which carried with it no postabandonment liability for future rent. As to the causes of action for breach of the alleged 1987 lease and bad faith denial of existence of a contract, Clement maintained that the signatures of Clement and petitioners on the proposed written sublease in 1987 which was never executed by the subtenants, neither reinstated the original lease nor created a new enforceable obligation.

On September 24, 1991, respondent court entered its order granting summary adjudication:

"(1) Plaintiffs' First Cause of Action has no merit in that it cannot be established that, at the time CLEMENT vacated Plaintiffs' premises in April of 1988, he was under any legal obligation to pay rent to Plaintiffs beyond that date;

"(2) Plaintiffs' Third Cause of Action has no merit in that it cannot be established that, in 1987 and in connection with his proposed sublease to Annette's, CLEMENT entered into an agreement with Plaintiffs to lease the premises from them for a term continuing until May 14, 1989 or for any other term;

"(3) Plaintiffs' Fourth Cause of Action has no merit in that it cannot be established that (a) CLEMENT denied without probable cause the existence of the 1984 lease, and (b) a valid contract arose in 1987 between Plaintiffs and CLEMENT in connection with the proposed sublease;

"(4) CLEMENT did not owe to Plaintiffs a duty to re-let the premises following his vacation thereof in April of 1988; and

"(5) CLEMENT had no duty to mitigate Plaintiffs' claimed losses as a result of his vacation of Plaintiffs' premises."

The trial court specifically held that the remedies provided by Civil Code section 1951.2[1] were not available to petitioners because Clement did not abandon the property within three days following his 1986 breach and petitioners did not terminate his right to possession by filing an unlawful detainer action. The court found that since Clement remained in possession after the three-day notice to quit was served, the parties by their conduct created a month-to-month tenancy and Clement was not therefore a lessee of real property within the meaning of section 1951.2.

This petition followed. We issued an order to show cause to consider the issue of whether the remedies of section 1951.2 are available to a landlord who terminates the lease but forgoes an unlawful detainer action and allows the tenant to remain on the premises.

## DISCUSSION

Petitioner contends the fact that the lessee continued in possession for some time after the lease was forfeited is not a bar to recovery under section 1951.2.

Section 1951.2 provides in pertinent part: "Except as otherwise provided in Section 1951.4, if a lessee of real property breaches the lease and abandons the property before the end of the term or if his right to possession is terminated by the lessor because of a breach of the lease, the lease terminates." The lessor's right of action arises "upon such termination." (§ 1951.2, subd. (a).) Four measures of damages are then available to the lessor.[2]

The enactment of section 1951.2 was " 'an admirable attempt to engraft the contract remedy of loss of bargain onto real property law. (Recommendation Relating to Real Property Leases (Nov. 1969) 9 Cal. Law Revision Com. Rep. (1969) appen. IV, pp. 157-163.) *It abrogates the common law rule that the lessee's obligation to pay rent depends on the continued*

---

[1] All further statutory references are to the Civil Code unless otherwise specified.

[2] The lessor's damages are as follows:

"(1) The worth at the time of award of the unpaid rent which had been earned at the time of termination;

"(2) The worth at the time of award of the amount by which the unpaid rent which would have been earned after termination until the time of award exceeds the amount of such rental loss that the lessee proves could have been reasonably avoided;

"(3) Subject to subdivision (c), the worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of such rental loss that the lessee proves could be reasonably avoided; and

"(4) Any other amount necessary to compensate the lessor for all the detriment proximately caused by the lessee's failure to perform his obligations under the lease or which in the ordinary course of things would be likely to result therefrom." (§ 1951.2, subd. (a).)

*existence of the term.* It encourages the lessor to mitigate damages by no longer requiring the reletting of the property to be for the benefit of the lessee. Its formula for damages permits the lessee to prove what rental loss could have been avoided. It provides for discounting unpaid future rent to present value. (2 Assem. J. (1970 Reg. Sess.) pp. 3040-3044 . . . .)' (Italics supplied.)" (*Danner* v. *Jarrett* (1983) 144 Cal.App.3d 164, 166-167 [192 Cal.Rptr. 535].)

In *Danner*, the parties executed a long-term lease for commercial property. Disputes over the payment of rent and late charges arose. The lessor filed an unlawful detainer action and the lease was declared forfeited. Subsequently, the lessor filed a suit pursuant to section 1951.2 seeking damages for the unpaid rent for the balance of the term of the lease less what was recovered by reletting the premises. The trial court ruled that the lessor was not entitled to relief under section 1951.2 since a forfeiture of the lease was declared in the prior unlawful detainer action.

We reversed, holding that a lessor is not precluded from terminating the right of a defaulting lessee to possession of the property and then recovering damages pursuant to section 1951.2 (144 Cal.App.3d at pp. 166-167.) In reaching this conclusion, we discussed with approval the discussion in *Sanders Construction Co.* v. *San Joaquin First Fed. Sav. & Loan Assn.* (1982) 136 Cal.App.3d 387 [186 Cal.Rptr. 218], of the legislative intent that gave rise to the statute. We also found our interpretation of section 1951.2 reinforced by the Law Revision Commission comment to section 1951.4; as we stated in *Danner*, "Section 1951.4 prescribes a remedy which must be incorporated in the lease itself. The comment states: 'The availability of a remedy under this section [1951.4] does not preclude the lessor from terminating the right of a defaulting lessee to possession of the property and then utilizing the remedy provided by Section 1951.2' (Cal. Law Revision Comm. com. to Civ. Code, § 1951.4, 10 West's Ann. Civ. Code (1983 pocket pt.) p. 117; Deering's Ann. Civ. Code (1981 ed). p. 523.)" (*Danner* v. *Jerrett, supra,* 144 Cal.App.3d at p. 167.)

We found further support for our position in Code of Civil Procedure section 1174.5 and its legislative history which provides: " 'A judgment in unlawful detainer declaring the forfeiture of the lease or agreement under which real property is held shall not relieve the lessee from liability pursuant to Section 1951.2 of the Civil Code.' Section 1174.5, which was enacted by the 1982 Legislature (Stats. 1982, ch. 488, § 1, eff. Jan. 1, 1983), was part of a legislative package recommended by the 1981 Conference of Delegates of the State Bar of California. The State Bar Committee on Administration of Justice supported the resolution sponsored by the Orange County Bar Association and concluded that the Legislature intended that the relief afforded

by Civil Code section 1951.2 should survive a forfeiture declared under Code of Civil Procedure section 1174. When Assembly Bill No. 3552, the progenitor of section 1174.5, was introduced in the Assembly Committee on Judiciary, the description of the bill's subject stated: 'This bill is intended to *maintain* a landlord's ability to recover damages even where an unlawful detainer judgment declares a forfeiture of the lease.' (Italics supplied.) We conclude that the bill was enacted to insure that the original legislative intent of section 1951.2 as expressed in the Law Revision Commission Report was effectuated. *Vasey* v. *California Dance Co.* (1977) 70 Cal.App.3d 742, 748 [139 Cal.Rptr. 72] . . . also recognizes that an unlawful detainer proceeding is not a bar to a subsequent action for damages." (*Danner* v. *Jarrett, supra,* at p. 167.)

 Clement maintains and respondent court ruled that the posttermination conduct of the parties and the relevant provisions of the lease (specifically paragraphs 30, 35 and 39), formed a new agreement by virtue of a creation of a month-to-month tenancy. None of these sections, however, relieves Clement of his obligations under the lease.

Paragraph 30 of the 1984 lease provides:

*"Default of the Tenant*

"In the event of any failure of Tenant to pay any rental due hereunder when the same shall be due, or any failure to perform any other of the terms, conditions or covenants of this Lease to be observed or performed by Tenant, or if Tenant shall become bankrupt or insolvent or file any debtor proceedings, or take or have taken against Tenant in any court pursuant to any statute either of the United States or of any state a petition in bankruptcy or insolvency or for reorganization or for the appointment of a receiver or trustee of all or a portion of Tenant's property, or if Tenant makes an assignment for the benefit of creditors, or petitions for or enters into an arrangement, or if Tenant shall abandon said premises, or suffer this lease to be taken under any writ of execution, then Owner, besides other rights or remedies it may have, may, at Owner's option, terminate this Lease, and (whether or not Owner elects to terminate this Lease) shall have the immediate right or re-entry and may remove all persons and property from the leased premises and such property may be removed and stored in a public warehouse or elsewhere at the cost of, and for the account of Tenant, all without service of notice or resort to legal process and without being deemed guilty of any manner of trespass, or forcible entry or detainer, or becoming liable for any loss or damage which may be occasioned thereby.

"No receipt of monies by the Owner from the Tenant, after the termination in any way of this Lease, or after the giving of any notice shall reinstate,

continue or extend the term of this Lease, or affect any notice given to the Tenant prior to the receipt of such money, it being agreed that after the service of notice or commencement of a suit, or after final judgment for possession of said premises, the Owner may receive and collect any rent due, and the payment of said rent shall not waive or affect said notice, said suit or said judgment.

"If Tenant breaches this Lease and abandons the property before the end of the term, or if Tenant's right to possession is terminated by Owner because of Tenant's breach of this Lease, this Lease terminates. On such termination, Owner may recover from Tenant:

"a. The worth at the time of award of the unpaid rent which had been earned at the time of termination;

"b. The worth at the time of award of the amount by which the unpaid rent which would have been earned after termination until the time of award exceeds the amount of such rental loss that Tenant proves could have been reasonably avoided;

"c. The worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of such rental loss for such period that Tenant proves could be reasonably avoided;

"d. Any other amount necessary to compensate Owner for all the detriment proximately caused by Tenant's failure to perform Tenant's obligations under this Lease, or which in the ordinary course of things would be likely to result therefrom; and

"e. At Owner's election, such other amounts in addition to or in lieu of the foregoing as may be permitted from time to time by applicable California [law]."

"The 'worth at the time of award' of the amounts referred to in subsections a and b above is computed by allowing interest at the rate of ten percent (10%) per annum. The 'worth at the time of award' of the amount referred to in subsection c above is computed by discounting such amount at the discount rate of the Federal Reserve Bank of San Francisco at the time of award plus one percent (1%).

"In determining the rent which would be payable by Tenant subsequent to termination, the annual rent for each year of the unexpired term shall be

equal to the average minimum and percentage rents and other charges equivalent to rent which were payable during the preceding full lease year, but taking into account any provisions for future rent escalation.

"Even though Tenant has breached this Lease and abandoned the premises; this Lease continues in effect for so long as Owner does not terminate Tenant's right to possession; and Owner may enforce all its rights and remedies under this Lease, including the right to recover rent as it becomes due under this Lease. In the event of such breach and abandonment, and so long as Owner has not terminated Tenant's right of possession, Tenant may sublet the premises or assign its interest in the Lease with the prior written consent of Owner, which consent shall not be unreasonably withheld.

"The rights of Owner under this Section are cumulative to all other rights or remedies now or hereafter given to Owner by law or by the terms of this Lease."

Paragraph 35 provides:

"Any holding over after the expiration of the said term, consent of the Owner, shall be construed to be a tenancy from month-to-month, and shall otherwise be on the terms and conditions herein specified, so far as applicable."

Paragraph 39 provides:

"The waiver by Owner of any breach of any term, covenant or condition herein contained shall not be deemed to be a waiver of such term, covenant or condition or any subsequent breach of the same or any other term, covenant or condition herein contained. The subsequent acceptance of rent hereunder by Owner shall not be deemed to be a waiver of any preceeding breach by Tenant of any term, covenant or condition of this Lease, including the failure of Tenant to pay the particular rental so accepted, regardless of Owner's knowledge of such preceeding breach at the time of acceptance of such rent. No covenant, term or condition of this Lease shall be deemed to have been waived by Owner, unless such waiver be in writing by Owner."

Paragraph 30 essentially tracks the language of section 1951.2 and allows petitioners to recover all of the amounts permitted by that section upon tenant's breach and landlord's termination of tenant's right to possession.

Clement argues that since paragraph 30 does not contain any express provision setting forth landlord's remedies when tenant breaches and landlord terminates the lease but tenant remains in possession, a month-to-month

tenancy was created pursuant to paragraph 35 of the lease. Paragraph 35, however, is only applicable after the *expiration* of the *term* of the lease. Here, the lease term did not expire until 1989, long after the lease was terminated in 1986.[3] Similarly, paragraph 39 does not aid Clement's position because it provides that the subsequent acceptance of rent by owner shall *not* be deemed to be a waiver of any preceding breach by tenant of any term, covenant or condition of the lease.

Clement also relies on *Dover Mobile Estates* v. *Fiber Form Products, Inc.* (1990) 220 Cal.App.3d 1494 [270 Cal.Rptr. 183]. In *Dover*, tenant Fiber Form entered into a five-year lease with landlord Old Town Properties in 1985. The lease was subordinate to any deeds of trust placed on the property. Old Town encumbered the property with a second deed of trust to Saratoga Savings and Loan. Old Town defaulted. Saratoga foreclosed and Dover bought the property at a trustee's sale. Dover knew of the Fiber Form lease before it purchased the property.

Dover notified Fiber Form that it had bought the property and told Fiber Form to direct future rent payments to it. The parties did not enter into a new lease, but Fiber Form continued to pay rent per the lease. In March 1987, Fiber Form and Dover discussed reducing the monthly rental at Fiber Form's request. Fiber Form allegedly advised Dover that the foreclosure extinguished the lease and contended it was operating under a month-to-month lease. Dover denied that such notice occurred but alleged that Fiber Form requested a one-year delay in a rent increase scheduled to take effect pursuant to the lease. In June 1987, Fiber Form gave Dover notice of its intent to vacate in 30 days. Fiber Form vacated the premises and stopped paying rent.

Dover filed suit against Fiber Form for rent and conversion. The trial court determined that the trustee's sale terminated the lease and entered judgment for Fiber Form. Dover appealed. The Sixth District affirmed. It held that the trustee's sale extinguished the lease so that Fiber Form became a month-to-month tenant, thereby allowing Fiber Form to terminate on 30 days notice. The court cited to authority holding that a lease which is subordinate to the deed of trust is extinguished by a foreclosure sale. Such a proceeding destroys a lease junior to the deed of trust as well as the lessee's rights and obligations under the lease. There is no privity of contract or of estate between the purchaser upon the decree of sale and the tenant. The purchaser may treat the tenant as an occupant without right and maintain ejectment for the premises. (220 Cal.App.3d at pp. 1498-1499, citations omitted.)

---

[3]For the same reason, section 1945 providing for renewal of lease by lessee's continued possession, applies only after the lease term has *expired* and so is inapplicable in the instant case.

The *Dover* court also noted that the fact that foreclosure terminates a subordinate lease comports with basic notions of priorities and notice. If the tenant and landlord expressly agree that the lease should be subordinate then the tenant is aware of the possibility that its lease could be extinguished by foreclosure. In *Dover* the lease itself provided that it was subordinate to the deed of trust. Accordingly, the lease was therefore extinguished by the trustee's sale. Since no new lease agreement was reached, Fiber Form was a month-to-month tenant. (220 Cal.App.3d at pp. 1500, 1501.)

*Dover* is inapposite in that the instant case does *not* involve a foreclosure sale and the extinguishment of a lease subordinate to the deed of trust with a subsequent creation of a month-to-month tenancy. Petitioners remained the owners of the property throughout the lease period and the parties remained in privity of contract and bound by the terms of the original lease.

Although not relied on by Clement, *Desert Plaza Partnership* v. *Waddell* (1986) 180 Cal.App.3d 805, 814 [225 Cal.Rptr. 775], holds that section 1951.2 does not preclude consensual arrangements between the parties for cancellation of the lease nor generally to make inapplicable well-established principles of waiver or estoppel.

In *Desert Plaza*, the lessor served its lessees with a notice to pay rent or quit which stated that the lessor thereby elected to declare the lease forfeited. Lessees elected not to pay the rent and notified lessor in writing of their acceptance of lessor's offer to terminate the lease. Lessees then vacated the premises. By reply mail, lessor's attorney wrote that neither party had any further obligation on the lease. A year later, lessor commenced an action for rent due at the time lessees vacated and thereafter until lessor relet the premises. The trial court entered judgment in lessor's favor, and refused to consider the lessees' asserted defenses of consensual cancellation, waiver or estoppel.

The appellate court reversed, holding that although the evidence did not establish the lessees' defenses as a matter of law, the evidence was sufficient to support the defenses, which should have been considered by the trial court. The court emphasized, however, that "the purpose of section 1951.2 was to afford an additional remedy to lessors and at the same time impose upon lessors the duty to mitigate damages by attempting to relet the premises. In imposing the duty to mitigate damages it was necessary to guard against the lessor's *unintentional waiver* of the new remedy simply by engaging in efforts to relet the premises [citations]." (*Desert Plaza Partnership* v. *Waddell, supra,* 180 Cal.App.3d at p. 814, italics in original.)

Here, it is undisputed that Clement breached the lease in 1986 and that petitioners served upon him a three-day notice to pay rent or quit which

included notification that the lease was forfeited. The fact that Clement was allowed to remain in possession and that no unlawful detainer action was brought does not relieve Clement of the obligations imposed by the lease.

It would be an anomaly to permit a landlord who evicts a tenant through an unlawful detainer action to recover damages under section 1951.2,[4] but disallow the same remedy to a landlord who for whatever reason allows the tenant to remain in possession after forfeiture of the lease. As the California Law Revision Commission expressly stated: "The lessor's right to recover damages for loss of the benefits of the lease *should be independent* of his right to bring an action for unlawful detainer to recover the possession of the property. The damages should be recoverable in a separate action *in addition to* any damages recovered as part of the unlawful detainer action. ██ ██ Of course, the lessor should not be entitled to recover twice for the same items of damages." (Recommendation Relating to Real Property (1969) 9 Cal. Law Revision Com. Rep. at p. 162, italics added.)[5]

██ Neither the lease itself nor the language of section 1951.2 requires a termination of possession for petitioners to recover damages. All that is required is lessee's breach and a termination of the lessee's *right* of possession. Both the lease and section 1951.2 state that the lessor may recover the damages specified "upon such termination." There is no claim by Clement of a subsequent agreement between the parties specifically relieving Clement of his obligations under the lease, as was the case in *Desert Plaza*. Nor is there any evidence petitioners waived their right to damages under section 1951.2 by entering into discussions with Clement concerning a sublet of a portion of the premises to others. Such efforts to mitigate damages do not waive the lessor's right to recover damages under section 1951.2. (See § 1951.2, subd. (d).) Petitioners are entitled to seek damages as provided for in section 1951.2.

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order summarily adjudicating petitioners' first and fourth causes of action. In all other respects, the petition is denied.

Smith, J., and Benson, J., concurred.

---

[4]An unlawful detainer proceeding is not a bar to a subsequent action for damages under section 1951.2. (See § 1952, subd. (b) and Code Civ. Proc., § 1174.5.)

[5]The language in section 1951.2 allowing damages "at the time of award" refers to the time of the award of judgment pursuant to the section 1951.2 action itself, not to the time of any unlawful detainer award. (*California Safety Center, Inc.* v. *Jax Car Sales* (1985) 164 Cal.App.3d 992 [211 Cal.Rptr. 39].)