Filed 5/12/16  Gaslamp Phase Two v. Gelateria Frizzante CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| GASLAMP PHASE TWO, LLC, <br><br> Plaintiff, Cross-Defendant and Respondent, <br><br> v. <br><br> GELATERIA FRIZZANTE, LLC, et al., <br><br> Defendants, Cross-Complainants and Appellants. | D067218 <br><br><br> (Super. Ct. No. 37-2012-00092893- CU-BC-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

Blackmar, Principe & Schmelter, George B. Blackmar and Timothy D. Principe for Defendants, Cross-complainants and Appellants.

Law Office of Edward W. Freedman and Edward W. Freedman for Plaintiff, Cross-defendant and Respondent.

In this action for breach of contract based on a commercial lease, defendants and appellants Gelateria Frizzante, LLC and its principals, Christine Kaufmann and Eric

Silberstein (together Gelateria) appeal a judgment following a court trial that found Gelateria liable to the lessor, plaintiff and respondent Gaslamp Phase Two, LLC (Gaslamp), for $110,362.43 rent owed and future rent, plus attorney fees and costs. Gelateria contends the award of rent under Civil Code[1] section 1951.2 cannot stand because (1) a disputed additional rent amount (common area maintenance, as defined in the lease) that Gaslamp demanded in a notice to pay rent or quit (Notice to Pay) was incorrect, (2) Gaslamp terminated Gelateria's right to possession and the lease by serving the Notice to Pay, which also declared a forfeiture of the lease, and therefore (3) the lease had already been terminated and Gelateria did not breach it when it surrendered the premises and ceased to pay rent, without any unlawful detainer action being filed pursuant to the Notice to Pay. (Code Civ. Proc., § 1161 [unlawful detainer law].)[2]

In response, Gaslamp admits that the amount of additional rent that it demanded in the Notice to Pay was incorrect, due to its then active appeal of property taxes that allowed it later to reduce and reconcile such CAM charges made to its tenants. Gaslamp nevertheless argues the trial court correctly determined that Gelateria had breached the terms of the lease by failing to make full payment and then vacating the premises before

---

[1]    All statutory references are to the Civil Code unless otherwise specified.  Section 1951.2, subdivision (a) provides, as relevant here, that "if a lessee of real property breaches the lease and abandons the property before the end of the term or if his right to possession is terminated by the lessor because of a breach of the lease, the lease terminates.  Upon such termination, the lessor may recover [specified damages] from the lessee."

[2]    Gelateria paid its base rent for several years, and this dispute arose over Gaslamp's charges for "Additional Rent" under the lease, denoted as common area maintenance or "CAM expenses."

2

the lease expired. The lease included a challenge procedure for incorrect rental charges, which was not utilized. The trial court made a related finding that the amount of additional rent demanded by Gaslamp was not "arbitrary or capricious." (*Lindenberg v. MacDonald* (1950) 34 Cal.2d 678, 679 (*Lindenberg*) [no constructive eviction found absent bad faith showing].)

Gaslamp thus argues the trial court reached the right result by determining that Gaslamp's actions in seeking the additional rent amount did not preclude an award to it of future rent due under the lease. Gelateria's breach of payment obligations was the operative fact that led to the termination of its right to possession, while the contractual obligation between the parties remained in force. (*Walt v. Superior Court* (1992) 8 Cal.App.4th 1667, 1672 (*Walt*) [lessor may terminate right of possession for lessee's breach of lease and file a separate action to recover damages for remainder of term without filing unlawful detainer].)

Our review of the record leads us to conclude that the award of future rent is well-founded under contractual and section 1951.2 analysis, because the lease obligations were not terminated for all purposes through any action of Gaslamp. Gelateria did not show that it was excused from its contractual obligations. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*A. Lease Relationship*

In 2006, Gelateria leased property for a small retail gelato store in a mixed use project Gaslamp owned in downtown San Diego. Christine Kaufmann was the manager of Gelateria, and she and Silberstein signed guarantees on the lease obligations. The

3

lease ran for five years after the store opened on April 19, 2007, and was to expire in May 2012.

Under Gaslamp's net-type lease, Gelateria was to pay a monthly base or minimum rent, and as additional rent, CAM expenses, based on its proportionate share of Gaslamp's operating expenses for the property, including taxes. Gaslamp's initial estimated CAM expenses for Gelateria's premises in 2007 were $1,299 per month. Gaslamp was to bill CAM expenses monthly, based on Gaslamp's estimate of the projected operating costs for the year. Gaslamp was allowed under paragraph 4.4(a) of the lease to make adjustments for those charges, based on its reconciliation of actual operating costs after the end of the year. Gaslamp billed and Gelateria paid a lump sum reconciliation surcharge based on the landlord's reconciliation of the actual operating expenses incurred during 2007 and 2008.

Under the lease, paragraph 4.5, the tenant was required to pay all rent (base rent or CAM) when due without any right to offset, even if the tenant did not believe the charges were proper. The lease contained paragraph 15.4(i), a procedure for challenging a demand for CAM charges if the tenant believed the amount sought was incorrect, allowing access to the landlord's books and records. This procedure included the statement, "Tenant's rights and remedies with respect to any errors and/or overcharges made by landlord with respect to expenses shall be limited to those expressly set forth in this Paragraph 15.4."

For several years, Gelateria continued its business and paid the rent owed. By the end of 2009, Gaslamp's estimated CAM expenses for Gelateria's premises went up to $1,918 per month, which Gelateria paid.

On July 12, 2010, Gaslamp's property manager, Courtney Pease, sent Gelateria a letter billing Gelateria for $7,003.86 for an additional "2009 CAM reconciliation amount due and 2010 retroactive charges for the increase in your monthly CAM payment." The letter contained attachments and explained that Gaslamp was in the process of appealing its property taxes, and that if Gaslamp were successful on its appeal, the benefits would be passed on to the tenants. Gaslamp supplied a breakdown of actual 2009 CAM expenses to explain how they were calculated, including taxes, and similarly detailed how the 2010 CAM estimates were calculated. This demand increased Gelateria's estimated CAM expenses charges to $2,373 per month, retroactive to January 1, 2010.

In response, Gelateria asked for more supporting documentation. It did not pursue the challenge procedures under the lease for disputing CAM charges. Gelateria's manager Kaufmann did not believe that the charged balance for 2009 or the estimated amount for 2010 were due, because they were based on a number of things in the reconciliation that she did not believe were correct.

In late October 2010, there was an armed robbery at Gelateria's store, and the business closed temporarily. Through November 2010, Gelateria paid its base rent but did not pay the CAM amounts being charged.

### B. Lease Default Provisions

On November 10, 2010, Gaslamp served on Gelateria its Notice to Pay. The Notice to Pay required payment within three days of $7,003.86, representing the disputed 2009 reconciliation CAM charges and the 2010 estimated CAM charges. Alternatively, the Notice to Pay demanded that within three days after service, Gelateria deliver possession of the premises, and notified it that upon failure to pay or quit, "legal proceedings will be instituted against you [Gelateria] to declare forfeiture of the lease . . . and to recover possession of said premises . . . as a result of your failure to comply with the terms of this notice." The Notice to Pay next stated that Gaslamp "does elect to declare the forfeiture of your [Gelateria's] Lease."

Gelateria retained legal counsel to discuss the matter with Gaslamp's counsel and object to the CAM charges. Gaslamp's counsel responded to Gelateria's attorney with this e-mail:

> "[Gelateria] is left with few options. Specifically: 1. Pay the CAM charges; 2. Litigate the UD, and if your client is wrong, get evicted and have continued financial liability on the Lease (or if able to cure post judgment, also have to pay my fees); or 3. Move out, and deal with only a collection action for back CAMs and rent due on the lease through expiration (less any successful mitigation efforts.)"

Kaufmann testified she had been told by Gaslamp's chief executive, Bob Champion, that Gaslamp had been successful in its appeal to reduce the County's tax assessments, and so she was surprised to receive the bill for additional CAM expenses. At that point, she understood that Gelateria's choices were to "pay or quit or litigate." She decided that the best option was to give the property back to the landlord, let it cancel

6

the lease, and deal with the repercussions later. On November 29, 2010, Gelateria turned in the keys and Kaufmann signed a "Receipt for Possession of Realty." The portion of the receipt for signature by Gaslamp made note that it reserved its right to bring an action for rental damages pursuant to the lease and section 1951.2, although its representatives did not sign the copy as provided in the record.

### C.  Lawsuit; Cross-Complaint

On February 27, 2012, Gaslamp filed its breach of contract complaint, seeking to recover damages under section 1951.2 for the unpaid rent that Gaslamp would have earned after termination, for the balance of the lease term. It also claimed breach of contract against Kaufmann and Silberstein on their guaranty obligations.

Gaslamp contended that Gelateria breached paragraph 19.1(b) of the lease, by abandoning or vacating the premises. Under its paragraph 19.2, the tenant's default was a condition precedent to Gaslamp's right to lease remedies, including the right to terminate the lease and recover damages under section 1951.2.

In defense, Gelateria answered and filed a cross-complaint. It contended that Gaslamp had terminated the lease without any breach by Gelateria, since Gelateria had paid all the specified rent due through the date of Gaslamp's termination, with the exception of the disputed CAM charges. Because Gaslamp had caused a premature termination of the lease, Gelateria asserted that Gaslamp could not recover the rent that would have been due for the remainder of the original lease term. Gelateria sought an accounting with respect to Gaslamp's allegedly excessive charges for the CAM expenses.

7

In preliminary proceedings, the trial court ruled that the cross-complaint had not been filed in a timely manner and was barred. However, Gelateria's counsel pursued its allegations in the form of its affirmative defenses, including excuse from performance.

*D. Trial and Statement of Decision*

At trial, the parties stipulated that Gaslamp had made appropriate efforts to mitigate its damages, by hiring a qualified real estate broker and obtaining a replacement tenant. Testimony at trial by Gaslamp's chief financial officer, David Lichterman, explained the source of its demands for the actual 2009 CAM expenses and estimates for the 2010 CAM expenses. Lichterman admitted that some of the CAM expenses in Exhibit 27 were overcharges (insurance, association dues, and management and administrative fees).

The main discrepancy in proof about the CAM charges was the amount attributable to Gaslamp's estimated property taxes. Gaslamp filed tax appeals for the 2009-2010 tax year. On October 29, 2010, Gaslamp's property tax consultant and agent reached an agreement with the county assessor's office, to stipulate to a reduction in the assessed value of Gaslamp's retail property from $18,130,218 to $11,590,000. Gaslamp's property tax charges and bills retroactive to 2009-2010 were accordingly corrected and reduced. At argument, Gaslamp's counsel stated that the refund checks were not actually received until 2011.

Eventually, Gaslamp calculated that Gelateria was entitled to a credit in 2010 of $6,475.01 for the estimated CAM expenses that Gelateria had overpaid in 2010, based on Gelateria's actual share of CAM expenses for 2010. Lichterman admitted that when

8

Gaslamp served the Notice to Pay, the $7,003.86 amount demanded in the Notice to Pay was not due and owing, but instead, Gaslamp actually owed Gelateria $6,475.01 for overpaid CAM charges.

As its key findings in the statement of decision, the court concluded that "the entire amount demanded in the notice to pay rent was not owed. However, the amount stated was not arbitrary and capricious. Further, the Court finds that the law and facts did not allow [Gelateria] to vacate the premise on November 29, 2010 prior to the expiration of the Lease in May 2012 without any future lease liability just because [Gelateria] was served with Gaslamp's apparently defective Notice to Pay or Quit on November 10, 2010." The court also found that Gaslamp had indicated it was reserving its right to and would bring an action for damages under section 1951.2, and there was never any estoppel, waiver or release by mutual agreement.

The court interpreted lease paragraph 19.1(b), stating that a default is an abandonment or vacation of the premises by the tenant, as requiring Gaslamp to prove that Gelateria had breached the lease, entitling it to damages. The court relied on section 1951.2 as allowing the landlord to recover damages when "a lessee of real property breaches the lease and abandons the property before the end of the term." The court expressly found that Gelateria "abandoned" the premises prior to the expiration of the lease, because it had relinquished all rights to the premises. Accordingly, Gaslamp had proved all elements of its breach of contract cause of action, as well as the guaranty obligations.

9

The court ruled that according to the stipulation at trial, Gaslamp adequately showed mitigation efforts. The court also found that Gelateria did not make any arguments related to their affirmative defenses and had failed to prove them. From the amount of base rent not received pursuant to the lease from December 2010 until May 2012, the court deducted a credit for Gelateria's security deposit, and further deducted a credit associated with the 2009-2010 additional rent reconciliation (ruling that it would have been applied on July 1, 2011 after Gaslamp received the refund checks). Interest was allowed as provided by the lease, for a total award of $110,362.41, jointly and severally, with attorney fees and costs to be determined.

Gelateria appeals from the resulting judgment for rents due. It also separately appealed the trial court's order of May 8, 2015, awarding Gaslamp attorney fees and costs.

DISCUSSION

I

*RULES OF REVIEW; STATEMENT OF DECISION*

Gelateria seeks to have a de novo standard of review applied to this appeal, which it argues raises pure questions of law. (See, e.g., *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799; *International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611 [application of law to undisputed facts is subject to de novo review].) Gelateria contends the decisive facts relevant to the appeal are undisputed and only issues of law remain for resolution, and claims that the trial court ruled in its favor "on the key factual issue at trial," by finding that "the entire amount demanded in the notice to pay rent was not

10

owed."  According to Gelateria, "This factual finding establishes the foundational basis for Gelateria's legal arguments in this appeal."  Gelateria thus contends this court can independently interpret the terms of section 1951.2, and the legal effect of the Notice to Pay, without being bound by the trial court's interpretation of the law.  (*Silicon Valley Taxpayers Assn., Inc. v. Santa Clara Open Space Authority* (2008) 44 Cal.4th 431, 441, 449-450.)

In response, Gaslamp takes the position that although issues of law are presented here, about whether the service of the Notice to Pay entitled Gelateria to vacate the premises, there were additional disputed factual issues that were resolved by the trial court, concerning whether the amount of additional rent demanded in the Notice to Pay was proper and whether Gelateria breached the lease by vacating the premises.  (*Sonic Mfg. Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465 [applying substantial evidence test to record containing conflicting evidence].)

Examination of the record and the statement of decision discloses that the trial court was required to resolve relevant disputed facts and to draw legal conclusions based upon those findings.  The court heard testimony from representatives of each side, and then interpreted the lease and other documents as necessary to resolve the issues presented.  Where, as here, the key documentary and statutory interpretation issues were decided on conflicting evidence, and by means of a statement of decision, "any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision."  (*In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 358.)  The ultimate facts found in the court's statement of

11

decision necessarily include findings on the intermediate evidentiary facts that sustain them. (*Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1125.)

Under substantial evidence principles, " ' "every intendment and presumption not contradicted by or inconsistent with the record on appeal must be indulged in favor of the orders and judgments of superior courts." ' " (*Jara v. Suprema Meats, Inc.* (2004) 121 Cal.App.4th 1238, 1250 (*Jara*), citing *Walling v. Kimball* (1941) 17 Cal.2d 364, 373.) "If the trial court's resolution of the factual issue is supported by substantial evidence, it must be affirmed." (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632.)

## II

### *FRAMEWORK FOR ANALYSIS*

To analyze Gelateria's main contention that the service on it of the Notice to Pay, containing erroneous demands, conclusively altered the parties' respective legal rights, we examine the sequence of events shown in the evidence, in light of statutory and case law requirements. Although in 2010, Gaslamp utilized a Notice to Pay and threatened to bring an unlawful detainer action, it did not need to pursue such a remedy, because Gelateria vacated the premises. This contract action was filed in 2012 and went to trial after the lease term expired. Gelateria's arguments throughout these proceedings have combined concepts found both in lease (contract) cases and constructive eviction (tort) cases, and the trial court's ruling expressly found a constructive eviction case, *Lindenberg*, *supra*, 34 Cal.2d 678, 686, to be on point. We address whether either party

12

forfeited their rights under the lease, in terms of breach of their legal duties imposed by contract and statute.

" ' "A lease is both a contract and a conveyance; under such an agreement there are rights and obligations based upon the relationship of landlord and tenant as well as upon the contractual promises." ' [Citation.] 'In every lease the landlord impliedly covenants that the tenant shall have quiet enjoyment and possession of the premises . . . . [T]he landlord is bound to refrain from action which interrupts the tenant's beneficial enjoyment.' [Citation.] 'It should be unnecessary to observe that a breach of contract is actionable without requiring the plaintiff to establish bad faith or malice.' " (*Munoz v. MacMillan* (2011) 195 Cal.App.4th 648, 655-656; *Guntert v. City of Stockton* (1976) 55 Cal.App.3d 131, 138 (*Guntert*).)

Section 1951.2 has been described as " 'an admirable attempt to engraft the contract remedy of loss of bargain onto real property law.' " (*Danner v. Jarrett* (1983) 144 Cal.App.3d 164, 166.) " 'It abrogates the common law rule that the lessee's obligation to pay rent depends on the continued existence of the term. It encourages the lessor to mitigate damages by no longer requiring the reletting of the property to be for the benefit of the lessee. Its formula for damages permits the lessee to prove what rental loss could have been avoided.' [¶] Thus, section 1951.2 provides contract remedies to the landlord that would have been unavailable at common law upon termination of the lease by surrender or otherwise. These remedies are defined by the landlord's contract with its tenant, not by rules derived from the common law of real property." (*Millikan v.*

13

*American Spectrum Real Estate Services California, Inc.* (2004) 117 Cal.App.4th 1094, 1101; italics omitted.)

A landlord may recover damages as specified in section 1951.2 under two types of circumstances: "if a lessee of real property breaches the lease and abandons the property before the end of the term," *or* "if his right to possession is terminated by the lessor because of a breach of the lease." In either event, the lease terminates. (*Ibid.*)[3]

Gelateria contends it was justified in vacating the premises on several grounds, and therefore there should be no statutory or contractual basis for Gaslamp to recover damages. We examine its claims of justification for any support in case law.

---

[3]    Section 1951.2 is lengthy and we need not discuss its measures of damages, as no issues were raised about them. As relevant here, section 1951.2, subdivision (a) provides that "if a lessee of real property breaches the lease and abandons the property before the end of the term or if his right to possession is terminated by the lessor because of a breach of the lease, the lease terminates. Upon such termination, the lessor may recover from the lessee: [¶] (2) The worth at the time of award of the amount by which the unpaid rent which would have been earned after termination until the time of award exceeds the amount of such rental loss that the lessee proves could have been reasonably avoided . . . . (4) Any other amount necessary to compensate the lessor for all the detriment proximately caused by the lessee's failure to perform his obligations under the lease or which in the ordinary course of things would be likely to result therefrom. [¶] (b) The 'worth at the time of award' of the amounts referred to in paragraphs (1) and (2) of subdivision (a) is computed by allowing interest at such lawful rate as may be specified in the lease or, if no such rate is specified in the lease, at the legal rate . . . . [¶] (d) Efforts by the lessor to mitigate the damages caused by the lessee's breach of the lease do not waive the lessor's right to recover damages under this section."

14

*EFFECT OF "DEFECTIVE" NOTICE TO PAY*

A.  Contentions; Relevant Rulings

Gelateria first argues its right to possession was not terminated as a result of any breach it committed, and therefore there was no basis for the damages awarded to Gaslamp, either under contract law or section 1951.2, subdivision (a).  In Gelateria's view, the scenario described in section 1951.2, subdivision (a) does not apply to it:  a lessor may recover damages if the lessee's right to possession was terminated by the lessor *because of a breach of the lease*, in which case the lease also terminates.  Rather, Gelateria focuses upon the November 10 Notice to Pay, as constituting different kinds of breaches of contract by Gaslamp.

Gelateria argues the Notice to Pay is defective, because the CAM expenses charged in it were later determined to be inaccurate.  Under the terms of the lease, only a failure to make payments due is a breach of the lease, and Gelateria argues these payments were not due.  (Lease, para. 19.1(a).)  On this contractual theory, Gelateria argues that Gaslamp breached the lease with its defective Notice to Pay, and effectively caused the lease and its obligations to terminate.

In its oral statement of decision, the trial court noted that this defense argument was effectively a constructive eviction theory, that Gaslamp had breached the lease's covenant of quiet enjoyment.  However, the court rejected Gelateria's contention that Gaslamp's service of the Notice to Pay, when some or all of the amounts contained in the Notice to Pay were not owed, constituted a breach of the lease which allowed Gelateria to

15

vacate the premise prior to the expiration of the lease without any future lease liability. Although the court found that the entire amount demanded in the Notice to Pay was not owed, it said "the amount stated in the Notice was not arbitrary and capricious. . . . ."

Gelateria also argues that Gaslamp repudiated and forfeited the lease and can no longer seek damages under it, because the Notice to Pay states that legal proceedings to declare a forfeiture will commence unless payment is made within three days after service of the notice. (See *Bell v. Listle* (1946) 74 Cal.App.2d 638, 645 [landlord's unjustified declaration of forfeiture of an oil lease repudiated the lease and excused performance by the tenant].) Also, the Notice to Pay contains an election to declare the forfeiture of the lease under which Gelateria held possession of the premises.

In support, Gelateria cites to *In re Windmill Farms, Inc.* (9th Cir. 1988) 841 F.2d 1467. In that case, the federal court applied California landlord-tenant law to resolve bankruptcy court disputes over assumptions of a commercial lease. The court considered whether a landlord's three-day notice to pay rent or quit was properly given, and stated that if so, the lease terminated at least by the time the landlord filed an unlawful detainer action. The court declined to decide "whether the lease terminated before [landlord] filed its unlawful detainer action." (*Id.* at p. 1470, italics omitted.) Accordingly, the *Windmill Farms* case is distinguishable because it does not decide the questions presented to us concerning the times that a lease may have terminated, in the absence of any filing of an unlawful detainer action. (*Ibid.*) However, *Windmill Farms* is instructive in its observations:

16

"[T]here is a tendency of the courts to collapse into one concept the two separate concepts of 'the time at which a lease is terminated,' on the one hand, and 'the time at which there is a final judicial determination that a lease is terminated,' on the other. Importantly, these two events are not necessarily coincident. *It is possible to define termination in such a way that events sufficient to constitute termination of a lease occur long before a court determines that the termination is valid under state law.* [Citation.] After the three-days' notice period has expired, if the lessee has failed to pay the rent in default, the lessee from that point forward is unlawfully detaining the premises if he remains in possession. [Citation.] Because his detention is 'unlawful,' he has lost his right to possession. His right to possession has been 'terminated by the lessor because of a breach of the lease [and] the lease terminates.' " (*Windmill Farms, supra*, at pp. 1470-1471, citing § 1951.2, subd. (a).)

These principles require us to focus on the right to possession of the premises under the lease, as it was affected by the service of the Notice to Pay.

## B.  Authorities and Analysis

In *Walt*, the lessor served the lessee with a three-day notice for nonpayment of rent, declaring a forfeiture of the lease. (*Walt*, *supra*, 8 Cal.App.4th at p. 1669.) Although the lessee did not make payment or vacate the premises within three days, the lessor did not file an unlawful detainer action; instead, the lessor and lessee entered into negotiations to attempt to sublease a portion of the premises to a third party, during which time the lessor allowed the lessee to remain in possession for 17 months. (*Ibid.*) When the negotiations proved unsuccessful, the lessor abandoned the premises with approximately 13 months left of the original lease term. (*Ibid.*)

In *Walt*, the appellate court held the lessor was entitled to section 1951.2 damages, even though he did not bring an unlawful detainer action. (*Walt*, *supra*, 8 Cal.App.4th at pp. 1671, 1678.) "Neither the lease itself nor the language of section 1951.2 requires a

17

termination of possession for [lessor] to recover damages. All that is required is lessee's breach and a termination of the lessee's *right* of possession." (*Id*. at p. 1678.) The court explained that a lessor's right to recover damages for loss of the benefits of the lease is independent of his right to bring an action for unlawful detainer to recover possession of the property. (*Ibid*.) "It would be an anomaly to permit a landlord who evicts a tenant through an unlawful detainer action to recover damages under section 1951.2, but disallow the same remedy to a landlord who for whatever reason allows the tenant to remain in possession after forfeiture of the lease." (*Walt, supra*, at p. 1678; fn. omitted.)

On this record, there was no termination of Gelateria's right to possession of the premises by any judgment in an unlawful detainer action, or by an established abandonment that utilized the formal procedures of section 1951.3. (*Walt*, *supra*, 8 Cal.App.4th at pp. 1677-1678.) The "receipt for possession of realty" Gelateria signed on November 29, 2010 reserved the party's rights and positions pertaining to remaining claims for rental value due under the lease. However, Gelateria continues to argue that Gaslamp's service of the Notice to Pay, which included a declaration the lease under which possession was held was forfeited, also served to forfeit the lease as a whole and all the rights under it. (*Ibid*.)

This argument is too broad. Generally, the Notice to Pay related to the lawfulness of possession of the premises and the possibility of an unlawful detainer proceeding. Termination of the lessee's right to possession is deemed termination of the lease for the purpose of recovery of damages under section 1951.2. (*Walt*, *supra*, 8 Cal.App.4th at pp. 1677-1678). Further, a lessor's right to recover section 1951.2 damages remains

18

intact even where the lessor did not bring an unlawful detainer action and the lessee remained in possession for some time, even after the lessee's *right* to possession has ended. (*Walt*, *supra*, at p. 1678; compare *Guntert, supra,* 55 Cal.App.3d at p. 151 [where lessee remained in possession and paid rent while suing lessor for partial breach of the lease].)

Accordingly, Gelateria can show no support for its theory that its lease obligations entirely disappeared, upon the landlord's service of a Notice to Pay containing an erroneous calculation of the CAM expenses due. The service of the Notice to Pay started the time running for the tenant's loss of the right of possession. However, the Notice to Pay did not terminate the lease relationship, which was contractual in nature. Although Gelateria remained in possession of the premises for a few weeks after the Notice to Pay was served, it was not in lawful possession, because the lease required it to make payments first and obtain reconciliations later.

The trial court correctly concluded that Gelateria could not vacate the premises prior to the expiration of the lease without any future lease liability, simply because some or all of the amounts contained in the Notice to Pay were not owed. Gaslamp retained the right to seek remedies under section 1951.2, after the lessee's right of possession had been terminated following the expiration of the time period given by the Notice to Pay.[4]

---

[4]    In its reply brief, Gelateria makes a new argument that the statement of decision failed to resolve a material legal issue on when the lease terminated. However, the trial court adequately addressed that issue through its findings that Gelateria's actions in failing to pay rent and abandoning the premises prior to the expiration date of the lease, had given up any right to possession.

# IV

## *EFFECT OF VACATING THE PREMISES; "ELECTION OF REMEDIES"*

### A.  Contentions

Gelateria argues that since Gaslamp acted to terminate the lease by serving its Notice to Pay, Gelateria did not commit any separate breach of an already terminated lease when it vacated the premises.  Effectively, it is arguing that Gaslamp had repudiated the lease in advance, thus excusing Gelateria as a tenant from further performance, in this way:

> "Unless one pretends that Gaslamp never served the improper Notice or threatened an eviction action, Gaslamp had already terminated and repudiated the Lease when Gelateria quit.  Gelateria could not be liable for breaching a lease that had already been terminated by Gaslamp."

It also argues:

> "By serving the Pay Rent or Quit Notice that declared forfeiture of the lease, Gaslamp made an election of remedies to terminate Gelateria's right of possession by utilizing the summary procedures of California's unlawful detainer procedures."

Gelateria is claiming the language of section 1951.2, subdivision (a) did not apply to its own actions, because Gaslamp did not show that Gelateria breached the lease and "abandoned" the property before the end of its term.  (*Ibid*.)  Although Gelateria signed a relinquishment of possession, it claims this was not the equivalent of voluntary abandonment.  (See *Asell v. Rodrigues* (1973) 32 Cal.App.3d 817, 824-825 [landlord's unsuccessful attempt to oust tenant with a notice of termination is actionable if done with bad faith or malice].)

20

In its statement of decision, the court relied on lease paragraph 19.1(b) as stating that a default is an abandonment or vacation of the premises by the tenant. Further: "The Court finds [Gelateria] "abandoned" the premise on November 29, 2010 when [Gelateria] vacated the premise prior to the expiration of the Lease in May 2012. There is no dispute that [Gelateria] vacated the premises and relinquished all rights in the premises on November 29, 2010. [Gelateria] signed the possession receipt on November 29, 2010 which established that [Gelateria] no longer had any right to possession of the premise. Abandonment may be inferred where the tenant's nonuse is coupled with an intent to relinquish all rights in the premises." The court thus ruled that Gaslamp established all elements of its breach of its contract cause of action against Gelateria.

As a threshold matter, we conclude the trial court properly interpreted lease paragraph 19.1(b) (which includes "vacating" the premises as a breach of the lease), as falling within the scope of section 1951.2, subdivision (a). This was a correct application of the statutory requirements. The language of the lease states that a breach of the lease may occur if the tenant either abandons or vacates the premises (para. 19.1(b)). Thus, the tenant's actions to "vacate" property may qualify as a breach not only within the meaning of the lease, but also within the meaning of the statute, which uses only the term "abandonment" in this context (although there is another statutory scenario set forth in section 1951.2, subdivision (a), identifying breaches of the lease as terminating the tenant's right of possession).

We next address whether Gelateria's assumption is correct, that due to previous breaches of the lease by Gaslamp, Gelateria was excused from remaining in possession of

21

the premises and therefore from further payment obligations under the remaining term of the lease.

## B. Authorities and Analysis

Although Gelateria claims it was forced to vacate, " '[a] threat made in good faith to resort to legal process does not constitute duress.' " *(Lindenberg*, *supra*, 34 Cal.2d at p. 683.) In its oral statement of decision, the trial court took note that Gelateria had chosen not to stand on the lease, but instead had moved out and effectively chosen to forfeit possession and grant the landlord entitlement to collect damages for the remaining term of the lease. This finding is well supported by the evidence.

A lessor's right to recover section 1951.2 damages remains intact even where the lessor does not bring an unlawful detainer action, but allows the lessee to remain in possession for some time after the lessee's *right* to possession has ended. (*Walt*, *supra*, 8 Cal.App.4th at p. 1678.) "Neither the lease itself nor the language of section 1951.2 requires a termination of possession for [lessor] to recover damages. All that is required is lessee's breach and a termination of the lessee's *right* of possession." (*Walt, supra,* at p. 1678.)

Even when a lessor has properly terminated the lessee's right to possession, the lease may continue for other purposes. For example, the lessee's obligation to pay rent continues. (*Danner v. Jarrett*, *supra*, 144 Cal.App.3d at pp. 166-167; *Guntert, supra,* 55 Cal.App.3d at p. 151.) The three-day notice of termination does not relieve the lessee of monetary obligations imposed by the lease, nor would an unlawful detainer judgment, if obtained. (*Walt*, *supra*, 8 Cal.App.4th at pp. 1672-1673.)

22

Under this line of authority, the court correctly found that Gelateria was not excused from further performance for the remainder of the lease term, because of the errors in the Notice to Pay. Its right to possession had been properly terminated upon the expiration of the Notice to Pay, when a breach occurred through the failure to make payment. (§ 1951.2, subd. (a).) Gelateria's contractual obligations remained in force, to pay the base rent and also the additional rent as charged, subject to available lease remedies. We next consider the related questions raised by the trial court's finding of a lack of bad faith in the service of the Notice to Pay.

V

*FINDING OF LACK OF BAD FAITH IN SERVING THE NOTICE TO PAY*

Gelateria additionally argues that the trial court focused on an irrelevant issue when it relied on *Lindenberg*, *supra*, 34 Cal.2d 678, to conclude that Gaslamp's service of the termination notice was not arbitrary, capricious or in bad faith. In effect, Gelateria argues that Gaslamp nevertheless breached the lease terms and thus failed to prove its own breach of contract claim.

In *Lindenberg*, *supra*, 34 Cal.2d 678, 679, the plaintiff sublessee sued its lessor for damages, asserting a bad faith, unlawful attempt to terminate the sublease by giving a notice to vacate that was accompanied by disclosures that the defendant lessors were attempting to obtain permits to proceed with demolition and redevelopment of the property. The court upheld a directed verdict for the defendant lessors, stating that "in order for plaintiff to recover damages for constructive unlawful eviction, or on any conceivable appropriate theory, it was incumbent upon him to establish bad faith by

23

defendants." (*Lindenberg*, *supra*, at p. 683.)  However, no evidence had been introduced "which on any tenable view could support a finding of bad faith."  (*Ibid.*)  " 'A threat made in good faith to resort to legal process does not constitute duress.  [Citations.]  By the same token, it cannot amount to a constructive eviction.  Whether or not the threat is made in good faith may or may not be a question of fact for the jury to decide.  That depends upon the state of the evidence."  (*Id.* at pp. 683-684.)

The court in *Lindenberg* further rejected the claim by the plaintiff that the notice to vacate was premature as a matter of law, because the redevelopment permits had not yet been finally approved.  The court said that although a premature notice may be legally ineffective, a proper and timely notice to vacate is not.  (*Lindenberg, supra,* 34 Cal.2d at p. 686.)  "We are satisfied that under these circumstances the mere giving of the notice did not constitute a constructive eviction and that by voluntarily departing from the premises, having full knowledge of all the facts which [plaintiff] now claims rendered the notice premature, he precluded the raising of any such question as would have arisen if he had chosen to remain in possession and resist a possible unlawful detainer action."  (*Ibid.*)

As noted, the court in this case determined that Gaslamp's act of serving the Notice to Pay was not arbitrary, unreasonable or in bad faith, and thus did not allow Gelateria to vacate the premises prior to the expiration of the lease without any future lease liability.  It is significant here that the trial court found that the tax refund credit Gelateria was entitled to receive, relating to the 2009-2010 CAM reconciliation, would have been applied on July 1, 2011, because Gaslamp received the refund checks in 2011.

24

The trial court impliedly found that due to the methods of accounting used, it was not unreasonable for Gaslamp to have some delay in making the reconciliation of CAM expenses after the resolution of its property tax appeal.

To the extent the court relied on the authority of *Lindenberg*, *supra*, 34 Cal.2d 678, its reasoning by analogy was supported by the record. Although *Lindenberg* was a constructive eviction case, it was instructive under these circumstances because it analyzed a similar sequence of events and concluded a tenant is not entitled to relief in tort based on receipt of a notice to vacate, unless there are factors indicating that the landlord was acting in bad faith. (*Id.* at pp. 683-686.) In our case, there was a procedure provided under the lease to challenge rent amounts being charged, and Gelateria as the tenant was made aware of the ongoing reconciliation process concerning tax liabilities as they affected the CAM expenses. Gelateria cannot properly rely upon its initial objections to the CAM amounts being charged, to constitute a legal excuse from its continued performance of the obligations under the lease.

Moreover, where the decision of a lower court is correct on any theory of law applicable to the case, the judgment or order must be affirmed regardless of the correctness of the grounds upon the lower court reached its conclusion. (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329.) The trial court properly applied statutory principles to the established facts. Its decision is supported by the evidence and reasonable inferences drawn from the evidence. (*In re Marriage of Hoffmeister, supra,* 191 Cal.App.3d 351, 358.)

25

DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to Gaslamp.


---
HUFFMAN, J.

WE CONCUR:


---
McCONNELL, P. J.


---
BENKE, J.